IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-10-1607** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN DOE #1, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On August 3, 2010, Plaintiff Abdel Fattah,[1] an inmate at the State Correctional Institution

at Rockview, Bellefonte, Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C.

§ 1983 and 28 U.S.C. § 1331. (Doc. 1). Plaintiff claims, in part, that three state officials deprived

him of his constitutional rights. Plaintiff's action against these state officials is a § 1983 civil rights

case. This is a *Bivens*[2] action pursuant to §1331 to the extent Plaintiff sues federal officials, namely,

---

[1]Plaintiff Fattah filed a previous § 1983 civil rights action with this Court. *See* Civil No.
03-1314, M.D. Pa.

[2]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct.
1999 (1971). Plaintiff Fattah's instant action falls, in part, within 28 U.S.C. § 1331 ("The district
courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or
treaties of the United States." (Emphasis added). This case is a *Bivens* action, in part, since
Plaintiff seeks monetary damages from federal officials for alleged violations of his constitutional
rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009
WL 1956282 (M.D. Pa.). Plaintiff's action also falls under §1983 since he seeks damages from
state actors for alleged violations of his constitutional rights. *See Parratt v. Taylor*, 451 U.S. 527
(1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-
Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).
In fact, Plaintiff recognizes on the cover page of his present Complaint that it is filed
under both §1983 and §1331. (Doc. 1, p. 1).

the Director of the Department of Homeland Security and ICE Supervisory Detention Officer, for damages due to alleged violations of his constitutional rights. Plaintiff has also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint which this court routinely provides to *pro se* litigants. *See* Doc. 1.[3] Defendants named in the Complaint are: John Doe #1, Director, Dept. of Homeland Security ("DHS"); Kelly A. Mitra, Supervisory Detention Officer, U.S. Immigration and Customs Enforcement ("ICE") at York County Prison; Cynthia L. Daub, Board Secretary at PA Board of Probation and Parole ("PA Board"); Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); John Doe #2, Owner of Columbia Care Center, Columbia, South Carolina ("CCC"); John Doe #3, Director of Columbia Care Center, Columbia, South Carolina; John Doe #4, Medical Director at Columbia Care Center, Columbia, South Carolina; and Mary Sabol, Warden, York County Prison ("YCP").

Plaintiff alleges that on June 17, 2008, he was released from the custody of the Pennsylvania Department of Corrections to the Department of Homeland Security. He alleges that despite his severe illness (*i.e.,* IV tubes inserted into both his arms to keep him alive because he was unable to eat or drink for the past seven years), unnamed DHS agents took him to JFK Airport and insisted on deporting him to Egypt based on an order by Defendant Mitra. Plaintiff states that Defendant John Doe #1 DHS Director and Defendant Mitra knew that the law forbade them from deporting

---

[3]In his form Complaint, Plaintiff indicated that he has fully exhausted the grievance procedure available at SCI-Rockview. (Doc. 1, p. 1, ¶ II. A.-C.). Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit, however the Defendant has the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

him since he was severely ill. He states that after the attempt to deport him failed, he was brought to York County Prison, where Defendant Sabol denied him necessary medical and psychiatric treatment, and denied him clothes and access to the courts for almost two months, *i.e.* June 17, 2008 through mid-August 2008.

Plaintiff states that he was then transferred from YCP to the Columbia Care Center in Columbia, South Carolina, a secure medical facility contracted with the federal and state governments to provide medical treatment to inmates with complicated illnesses. He states that he was denied medical care and given improper medical treatment during his stay at CCC, including the insertion of the wrong type of feeding tube in the wrong place by John Doe Defendants #3 and #4, which was ordered by a District Court Judge in the District of South Carolina. Plaintiff avers that Dr. John Doe Defendant #4 refused to give him proper pain medication at CCC. Plaintiff states that he spent about one year in CCC and that during this time he was denied proper medical treatment. Plaintiff states that John Doe Defendants # 2, #3 and #4 failed to respond his complaints regarding his medical treatment at CCC. Plaintiff states that he also wrote to John Doe Defendants #1, DHS Director, about his improper medical care at CCC, but that this Defendant failed to take any action.

Plaintiff also states that John Doe Defendant #1 DHS Director detained him illegally and discriminated against him by keeping him an extra six months in immigration custody. Plaintiff avers that "[after a year from my parole [Defendant ] Sec. Daub [of the PA Board] has viloated (sic) every state law by resended (sic) [rescinding] my parole and/or permitted it to be resended (sic), and now I've been fighting the Parole Board and the DOC as well as [DOC] Sec. Beard for continuely

(sic) breaking the law by keeping me in thire (sic) custoud (sic) [custody] without any legal justification."[4]  (See ¶'s 1, 2 and 3 of Statement of Claim, pages 2-3 of Complaint, Doc. 1).

Additionally, Plaintiff alleges that he has "been forced to live in unsanitary place which subjects my surgery to constant infection[.] my cell does not have any air condition or ventilation (sic)." Plaintiff does not state the personal involvement of any Defendant with respect to his Eighth Amendment conditions of confinement claim.

Moreover, Plaintiff does not specifically state the time frame of his present claims, and he acknowledges that he may have been required under the applicable statute of limitations ("SOL") to file his action with this Court earlier over the past months.  However, Plaintiff contends that due to his brain damage and memory loss as well as the constant violations of his rights, he should be excused from the SOL.  (Id., p. 4).

As relief, Plaintiff seeks immediate release from custody and/or proper medical treatment so that he can survive the jail environment.  Plaintiff also seeks that all named Defendants be punished for breaking state and federal law.[5]  Further, Plaintiff seeks nominal, compensatory and punitive damages.  (Doc. 1, p. 3, Section IV, "Relief).  Plaintiff does not indicate if he sues

---

[4]As discussed below, to the extent Plaintiff is challenging the duration of his immigration custody by ICE and the fact of his confinement by the DOC and the PA Board, and to the extent Plaintiff is seeking his release from custody, he must raise these claims in petitions for writ of habeas corpus, both under §2241 with respect to ICE's custody and §2254 with respect to his confinement by the DOC and the PA Board.  See Hairston v. Gronolsky, 347 Fed.Appx. 737, 738-39 (3d Cir. 2009) ("challenges addressed to the fact or duration of confinement or to the execution of a sentence generally are cognizable in habeas") (citations omitted).

[5]This Court cannot impose criminal charges or sanctions against Defendants in a civil rights action.  See Mathews v. Villella, 2009 WL 311177, * 2 (M.D. Pa.).

Defendants in their individual or official capacities.[6]

We now screen Plaintiff's Complaint as we are obliged to do under the PLRA.  *See Sims v. Piazza*, 2009 WL 3147800 (M.D. Pa.); *O'Connell v. Sobina*, 2008 WL 144199 (W.D. Pa.).[7]

## III.  PLRA.

As stated, Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).   The Prison Litigation Reform Act of 1995,[8] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[9]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the

---

[6]To the extent that Plaintiff is seeking monetary damages from Defendants Daub, Beard and Sabol, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Walker v. Beard*, 244 Fed. Appx. 439, 440-441 (3d Cir. 2007)*; Atwell v. Schweiker*, 274 Fed. Appx. 116, 118 (Non-Precedential) (3d Cir. 2007).

In so far as Plaintiff is seeking monetary damages from Defendants John Doe #1 and Mitra, he can only sue the federal actor Defendants in their individual or personal capacities. *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998);  *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.).

[7]The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

[8]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[9]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 2, 3 and 5).

court determines that (A) the allegation of
poverty is untrue; or (B) the action or appeal
(i) is frivolous or malicious; (ii) fails to
state a claim on which relief may be granted;
or (iii) seeks monetary relief against a
defendant who is immune from such relief.

## IV. Civil Rights Standards.

*1. Section 1983 Standard*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009

WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it

is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273,

284-85 (2002).[10] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-

499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

---

[10]Plaintiff indicates in his pleading that Defendants Daub, Beard and Sabol are  state
agents.

personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra*.

2. *Bivens Standard*

As stated, insofar as Plaintiff's instant case alleges violations of his constitutional rights by Defendants John Doe #1 DHS Director and Mitra, ICE Supervisory Detention Officer, it is a § 1331 civil rights action under *Bivens*.[11] In *Naranjo v. Martinez*, 2009 WL 4268598, *6, the Court stated:

---

[11]The Third Circuit in *Banks v. Roberts*, 2007 WL 3096585, * 1, n. 1, 251 Fed. Appx. 774 (3d Cir. 10-19-07) (Non-Precedential) noted that, "[a] '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens* . . . ." *See also Naranjo v. Martinez*, 2009 WL 4268598, *1, n.1 (M.D. Pa.)(*Bivens* is the shorthand given to claims made against a federal agent for violations of a federal right, including constitutional rights.") (citation omitted).

> *Bivens* creates no substantive rights, but rather allows "a citizen
> suffering a compensable injury to a constitutionally protected interest [to]
> invoke the general federal-question jurisdiction of the district court to
> obtain an award of monetary damages against the responsible federal official."
> *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
> A civil rights claim brought under Bivens is the federal counterpart to an
> action brought under 42 U.S.C. § 1983, and the same legal principles
> governing a § 1983 claim apply to a *Bivens* claim.  *Brown v. Philip Morris Inc.*,
> 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871
> (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3
> (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show
> that the defendant, acting under color of Federal law, deprived him of a
> right secured by the Constitution or laws of the United States. *Brown*,
> 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.

> Civil rights claims may only be brought against "persons." 42 U.S.C.
> § 1983. Individual liability in a civil rights action is personal in nature,
> and a defendant is liable only if he was personally, affirmatively involved
> in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159,
> 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294
> (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa
> Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345
> (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).
> Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983
> suits, a plaintiff must plead that each Government-official defendant,
> through the official's own individual actions, has violated the constitution."
> *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d
> 868 (2009) (collecting cases).

Further, a *Bivens* action is analogous to a civil rights action under 42 U.S.C. §1983.  *Id.*; *Reynolds v. BOP*, 2010 WL 744127, *3 (E.D. Pa.).  *See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.")(citation omitted).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews*

*v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**V. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Alleghany]*, 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly*, 550 U.S. at 555) (not precedential).

Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

## VI. Discussion.

### 1. *Eighth Amendment improper medical care claims at CCC*

As mentioned, Plaintiff states that after he was transferred from the YCP to the CCC in Columbia, South Carolina, he was denied medical care and given improper medical treatment during his stay at CCC, including the insertion of the wrong type of feeding tube in the wrong place by John Doe Defendants #3 and #4. Plaintiff states that the feeding tube tube was ordered by a District Court Judge in the District of South Carolina. Plaintiff avers that Dr. John Doe Defendant #4, Medical Director at CCC, refused to give him proper pain medication. Plaintiff states that he spent about one year in CCC (*i.e.* mid-August 2008 through mid-August 2009) and that during this time he was denied proper medical treatment. Plaintiff states that John Doe Defendants # 2, owner of CCC, #3, Director of CCC, and #4, Medical Director at CCC, failed to respond his complaints regarding his medical treatment at CCC. Plaintiff states that he also wrote to John Doe

Defendants #1 DHS Director about his improper medical care at CCC, but that this Defendant failed to take any action.

We find that venue with respect to Plaintiff's Eighth Amendment denial of proper medical care claims against the John Doe Defendants at CCC does not properly lie with this Court, and that these claims should be dismissed without prejudice to Plaintiff to file an action in the District Court for the District of South Carolina. *See* 28 U.S.C. § 1391(b). *See also Holley v. Robinson*, 2010 WL 1837797 (M.D. Pa.).

Plaintiff's Eighth Amendment claims against the Columbia, South Carolina employees of CCC arose while he was in Columbia, South Carolina, and incarcerated at CCC. These claims relate to alleged unconstitutional actions by the owner and employees of CCC in Columbia, South Carolina. Columbia, South Carolina, is within the jurisdiction of the United States District Court for the District of South Carolina, and the CCC Defendants are located there. Venue is therefore proper in the District of South Carolina with respect to all of Plaintiff's constitutional claims against the CCC Defendants, namely, John Doe Defendants # 2, owner of CCC, #3, Director of CCC , and #4, Medical Director at CCC.

Accordingly, we will recommend that all of Plaintiff's Eight Amendment claims against Defendants John Doe Defendants # 2, owner of CCC, #3, Director of CCC , and #4, Medical Director at CCC be dismissed without prejudice to Plaintiff filing them in the United States District Court for the District of South Carolina. *See Joyner v. BOP*, 2005 WL 3088371 (M.D. Pa.); *Michtavi v. Miner*, Civil No. 07-0628, M.D. Pa.; *Aponte v. Cheponis*, Civil No. 10-0003, M.D. Pa. Alternatively, we will recommend that all of Plaintiff's claims against the stated CCC Defendants be

transferred to the District of South Carolina pursuant to 28 U.S.C. § 1406(a). *See Holley, supra.*

      2.    *Plaintiff's Claims Challenging his detention by ICE and his confinement by DOC and PA Board*

To the extent Plaintiff is challenging the duration of his immigration custody by ICE and Defendant John Doe #1 as illegal and discriminatory, and he challenges the fact of his confinement by the DOC (by Defendant Beard) and the PA Board (by Defendant Daub), and to the extent Plaintiff is seeking his release from custody, he must raise these claims in petitions for writ of habeas corpus, both under §2241 with respect to ICE's custody and §2254 with respect to his confinement by the DOC and the PA Board. *See Hairston, supra.*

The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973); *Queen v. Miner*, C.A. No. 08-1049 (3d Cir. 2-29-08), slip op. p. 3, n. 3 (Per Curiam) ("challenge that affects fact or duration of confinement must be brought in habeas petition") (citing *Preiser, supra*.).

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002), stated:

> whenever the challenge ultimately attacks the 'core of habeas' -- the validity of the continued conviction or the fact or length of the sentence -- a challenge, however denominated and <u>regardless of the relief sought,</u> must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate. (Emphasis added).

Thus, Plaintiff's stated claims challenging the duration of ICE's detainment of him and the fact or length of his confinement in state prison must be brought in a § 2241 and a §2254 habeas

petition, respectively. Since we find that with respect to Defendant Beard and Defendant Daub, Plaintiff is only challenging the fact or length of his confinement in state prison, *i.e.* he alleges that Defendant Daub improperly rescinded his parole and that Daub along with Defendant Beard are keeping him in DOC custody without legal justification, we will recommend that these two Defendants be dismissed entirely from this action. Also, insofar as Plaintiff alleges that Defendant John Doe #1 is illegally detaining him in ICE custody an extra 6 months, Plaintiff must raise this claim in a §2241 habeas petition, and we will recommend that it be dismissed.

3.      *Claims against federal Defendants John Doe #,1 DHS Director, and Mitra, ICE Supervisory Detention Officer*

Plaintiff avers that Defendant John Doe #1 DHS Director and Defendant Mitra knew that the law forbade them from deporting him since he was severely ill, he was living on IV's, and he was on life support. Plaintiff states that despite this knowledge, in June 2008, Defendant John Doe #1 DHS Director and Defendant Mitra directed ICE agents to take him to JFK Airport to deport him to Egypt. Plaintiff alleges that after a failed attempt to deport him, he was taken to YCP. (Doc. 1, p. 2).

As stated, Plaintiff also alleges that Defendant John Doe #1 DHS Director has illegally detained and kept in ICE custody beyond the time period legally permissible. Since we have found this latter claim against Defendant John Doe #1 DHS Director must be raised in a §2241 habeas petition, we will not further address it herein.

We find that Plaintiff has failed to state any cognizable constitutional claim against Defendant John Doe #1 DHS Director and Defendant Mitra. Plaintiff admits that he was not deported in June 2008, and he relies only on hearsay with respect to the personal involvement of

13

Defendant Mitra in this incident, *i.e.* "the [ICE] agents told me they were ordered by [Defendant] Mitra to deport me right now to Egypt." (*Id.*, p. 2). Further, Plaintiff does not state any direct personal involvement by Defendant John Doe #1 DHS Director with respect to his illegal deportation claim.

Also, insofar as Plaintiff alleges that Defendant John Doe #1 DHS Director and Defendant Mitra tried to illegally deport him to Egypt based on his medical condition and that ICE was relying on "false information and travel documents" to deport him, we find that these claims must be raised in a §2241 habeas petition.

Thus, we will recommend that Defendant John Doe #1 DHS Director and Defendant Mitra be dismissed.[12]

*4. Claims against Defendant Sabol*

Plaintiff simply avers that after the failed attempt by ICE to deport him on June 17, 2008, he was taken by ICE agents to YCP "where Warden Sabol have denied any and all medical and physicatric (sic) treatment that I needed to sustain life, Warden Sabol also denied me any and all constitutional rights such as clothes, access to courts etc., for almost two months... ." (*Id.*, p. 2).[13]

---

[12]Insofar as Plaintiff states that Defendant John Doe #1 DHS Director has illegally detained him and discriminated against him by keeping him an extra 6 months in ICE custody (Doc. 1, p. 3), Plaintiff does not sufficiently allege that this Defendant acted with a discriminatory purpose as required to state a claim under the Fifth Amendment. See *Womack v. Smith*, 2009 WL 5214966, *5(M.D. Pa.) Citing *Iqbal*, 129 S. Ct. at 1944.

[13]We note that Plaintiff's claims against Defendant Sabol seem to have covered the time period of June 17, 2008 through mid-August 2008, and may be time-barred, in part. However, the SOL is an affirmative defense for Defendant to raise. *See Chester v. Beard*, 657 F.Supp.2d 534 (M.D. Pa. 2009)

We find that Plaintiff has not stated any cognizable constitutional claim against Defendant Sabol, including an Eighth Amendment denial of proper medical care claim, an Eighth Amendment condition of confinement claim, and a First Amendment access to courts claim.

Plaintiff does not allege with any specificity what the personal involvement of Defendant Sabol was to deprive him of proper medical attention at YCP. Plaintiff does not state that Defendant Sabol personally acted with deliberate indifference towards a substantial risk of serious harm to him. Nor does Plaintiff sufficiently allege how Defendant Sabol personally deprived him of any human necessities during his 2-month confinement at YCP and how she personally denied him access to the courts such that he suffered any actual injury to one of his court cases. Liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976); *Innis v. Wilson*, 2009 WL 1608502 (3d Cir.); *Womack v. Smith*, 2009 WL 5214966, *5-*6 (M.D. Pa.).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as Plaintiff asserts, in part, against Defendant Sabol, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106. Moreover, a differing opinion as to the appropriate medical care does not amount to an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied,* 486 U.S. 1006 (1998). Also, the doctrine of *respondeat superior* is not an acceptable basis for liability under Section 1983. *See Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Rizzo v. Goode*, 423 U.S. 367 (1976); and *Innis, supra*.

As stated, Plaintiff does not state how Defendant Sabol personally acted with deliberate indifference towards a substantial risk of serious harm to him. Plaintiff does not even state that Defendant Sabol was personally involved with his medical care during his short confinement in YCP. Thus, we will recommend that Plaintiff's Eighth Amendment denial of proper medical care claim against Defendant Sabol be dismissed.

In *Williams v. Klem*, 2008 WL 4453100, *6-*7(M.D. Pa.), the Court stated:

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To establish an Eighth Amendment claim, Williams must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer,* 511 U.S. at 834. In reviewing this type of claim, the courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional

conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in *Wilson v. Seiter,* 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991):

Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. *See Farmer,* 511 U.S. at 837.

Plaintiff has not alleged that Defendant Sabol 's deprivation of clothes while he was confined in YCP posed a risk of serious harm to him, he has not stated how long he was deprived clothes and, he has not alleged that Sabol acted with the requisite culpable state of mind. (Doc. 1, p. 2). Thus, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Sabol be dismissed.

The Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim;

the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina* , 2008 WL 144199, * 10 (W. D. Pa.), the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 415.

In his Complaint, Plaintiff Fattah does not allege that he suffered any actual injury to any court case due to personal conduct by Defendant Sabol. Thus, since Plaintiff does not state that any underlying claims were harmed by any alleged conduct of Defendant Sabol, he fails to state a First Amendment claim for denial of access to the court. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential)("*Christopher* [case] requires that 'the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.")(citing *Christopher* at 416).

Thus, we will recommend that Plaintiff's First Amendment denial of access to courts claim against Defendant Sabol be dismissed. Since we find no further claims against Defendant Sabol,

we will recommend that she be dismissed entirely from this action.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that all of Plaintiff's Eighth Amendment claims against Defendants John Doe Defendants # 2, owner of CCC, #3, Director of CCC, and #4, Medical Director at CCC be dismissed without prejudice to Plaintiff filing them in the United States District Court for the District of South Carolina.  In the alternative, it is recommended that all of Plaintiff's claims against the stated three (3) CCC Defendants be transferred to the United States District Court for the District of South Carolina.  It is recommended that Plaintiff's claims challenging the duration of ICE's detainment of him and the fact or length of his confinement in state prison be dismissed with prejudice since they must be brought in a § 2241 habeas petition and a §2254 habeas petition, respectively.  It is recommended that Defendant Beard and Defendant Daub be dismissed with prejudice since Plaintiff is only challenging the fact or length of his confinement in state prison, *i.e.* he alleges that Defendant Daub improperly rescinded his parole and that Daub along with Defendant Beard are keeping him in DOC custody without legal justification.  Also, it recommended that insofar as Plaintiff alleges that Defendant John Doe #1 is illegally detaining him in ICE custody an extra six (6) months, this claim be dismissed with prejudice since Plaintiff must raise this claim in a § 2241 habeas petition.

Further, it is recommended that Plaintiff's claim that Defendant John Doe #1 DHS Director and Defendant Mitra tried to illegally deport him to Egypt based on his medical condition and that ICE was relying on "false information and travel documents" be dismissed with prejudice, since we find that these claims must be raised in a § 2241 habeas petition.  It is also recommended that

Defendant John Doe #1 DHS Director and Defendant Mitra be dismissed entirely from this action.[14]

Additionally, it is recommended that Plaintiff's Eighth Amendment denial of proper medical care claim, his Eighth Amendment condition of confinement claim, and his First Amendment denial of access to courts claim against Defendant Sabol be dismissed without prejudice to allow Plaintiff to file an Amended Complaint regarding his constitutional claims arising at York County Prison.

Finally, it is recommended that Plaintiff's *in forma pauperis* Motion (Doc. 2) be granted.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 21, 2010**

---

[14]Pursuant to our above discussion, we find futility of any amendment of Plaintiff's stated federal claims against Defendant Beard, Defendant Daub, Defendant John Doe #1 DHS Director and Defendant Mitra, and we do not recommend Plaintiff be granted leave to amend his pleading with respect to these claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-10-1607** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN DOE #1, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 21, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                            **s/ Thomas M. Blewitt**
_____   **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**


**Dated:   September 21, 2010**