IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-10-1607** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MARY SABOL, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On August 3, 2010, Plaintiff Abdel Fattah,[1] an inmate at the State Correctional Institution

at Rockview, Bellefonte, Pennsylvania, initially filed, *pro se*,[2] the instant civil rights action, in part

under *Bivens,*[3] pursuant to 28 U.S.C. § 1331.  Plaintiff's action was also filed under §1983 since he

sought damages from state actors for alleged violations of his constitutional rights.  *See Parratt v.*

*Taylor*, 451 U.S. 527 (1981); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3

---

[1] Plaintiff Fattah also filed other action with this Court, namely, Civil No. 03-1314, 03-2169, 04-2346, 08-MC-164 and 11-0985.  On August 22, 2011, we issued an R&R in Fattah's case number 11-0985, his Habeas Corpus Petition pursuant to 28 U.S.C. § 2254, and we recommended that Fattah's Habeas Petition be denied.

[2]Counsel for Plaintiff entered an appearance on November 12, 2010.  (Doc. 12).

[3]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff Fattah's instant action fell under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).  This case was a *Bivens* action since Plaintiff sought monetary damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.).

(M.D. Pa.). (Doc. 1).  Plaintiff also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 2).

Defendants named in Plaintiff's original Complaint were:  John Doe #1, Director, Dept. of Homeland Security ("DHS"); Kelly A. Mitra, Supervisory Detention Officer, U.S. Immigration and Customs Enforcement ("ICE") at York County Prison; Cynthia L. Daub, Board Secretary at PA Board of Probation and Parole ("PA Board"); Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); John Doe #2, Owner of Columbia Care Center, Columbia, South Carolina ("CCC"); John Doe #3, Director of Columbia Care Center, Columbia, South Carolina; John Doe #4, Medical Director at Columbia Care Center, Columbia, South Carolina; and Mary Sabol, Warden, York County Prison ("YCP").   (Doc. 1).

On September 21, 2010, we screened Plaintiff's original Complaint as required under the PLRA and we issued an R&R.  (Doc. 13).  We recommended that all of Plaintiff's Eighth Amendment claims against Defendants John Doe Defendants # 2, owner of CCC, #3, Director of CCC, and #4, Medical Director at CCC be dismissed without prejudice to Plaintiff filing them in the United States District Court for the District of South Carolina.   In the alternative, we recommended that all of Plaintiff's claims against the stated three (3) CCC Defendants be transferred to the United States District Court for the District of South Carolina.  We recommended that Plaintiff's claims challenging the duration of ICE's detainment of him and the fact or length of his confinement in state prison be dismissed with prejudice since they must be brought in a § 2254 habeas petition and a §2254 habeas petition, respectively.   We recommended that Defendant Beard and Defendant Daub be dismissed with prejudice since Plaintiff was only challenging the fact or length of his confinement in state prison, *i.e.* he alleged that Defendant Daub improperly

rescinded his parole and that Daub along with Defendant Beard were keeping him in DOC custody without legal justification. Also, we recommended that insofar as Plaintiff alleged that Defendant John Doe #1 was illegally detaining him in ICE custody an extra six (6) months, this claim be dismissed with prejudice since Plaintiff must raise this claim in a §2254 habeas petition.

Further, we recommended that Plaintiff's claim that defendant John Doe #1 DHS Director and Defendant Mitra tried to illegally deport him to Egypt based on his medical condition and that ICE was relying on "false information and travel documents" be dismissed with prejudice, since these claims must be raised in a § 2241 habeas petition. We also recommended that Defendant John Doe #1 DHS Director and Defendant Mitra be dismissed entirely from this action.

Additionally, we recommended that Plaintiff's Eighth Amendment denial of proper medical care claim, his Eighth Amendment condition of confinement claim, and his First Amendment denial of access to courts claim against Defendant Sabol be dismissed without prejudice to allow Plaintiff to file an Amended Complaint regarding his constitutional claims arising at York County Prison.

Finally, we recommended that Plaintiff's *in forma pauperis* Motion (Doc. 2) be granted.

On December 13, 2010, the District Court issued a memorandum and Order and adopted our R&R. (Doc. 17). *See Fattah v. Doe*, 2010 WL 5147449 (M.D. Pa.) (CV-10-1607). Since Plaintiff's Eighth Amendment denial of proper medical care claim, his Eighth Amendment condition of confinement claim, and his First Amendment denial of access to courts claim against Defendant Sabol were dismissed without prejudice, we calendared this case to allow Plaintiff to file an Amended Complaint as against only Defendant Sabol. We gave Plaintiff 30 days from the date of the District Court's Order to file his Amended Complaint against Defendant Sabol and he failed to

3

timely file his amended pleading or request more time within which to do so.  Thus, we construed Plaintiff as wilfully abandoning his action.

Therefore, on January 18, 2011, we issued an R&R and recommended that this action be dismissed without prejudice on the basis of Plaintiff Fattah's failure to comply with the Court's December 13, 2010 Order.  It was also recommended that Plaintiff's case be dismissed without prejudice on the basis of his failure to prosecute his action by filing his Amended Complaint against Defendant Sabol.  (Doc. 18).  Plaintiff filed objections to our R&R.

On July 25, 2011, the Court issued an Order, found that Plaintiff's failure to timely file his Amended Complaint appeared not to be wilful, and rejected our Doc. 18 R&R.  (Doc. 24).  The Court afforded Plaintiff 30 days to his Amended Complaint and recommitted this case to the undersigned.

On August 24, 2011, Plaintiff filed, through counsel, his lengthy 34-page Amended Complaint.  (Doc. 25).  Plaintiff names the following twenty-one (21) Defendants: Mary Sabol, Warden of York County Prison ("YCP"); Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("PA-DOC"); Thomas Decker, Field Office Director, Department of Homeland Security ("DHS"), Philadelphia Filed Office; Deputy Warden Buono, York County Prison; Joseph Sallemi, IHP Director, DHS at York County Prison detention facility; Kelly Mitra, Supervisory Detention and Deportation Officer for the DHS and U.S. Immigration and Customs Enforcement ("ICE"); Jennifer Miosi, employee of Prime Care Incorporated; Jesse Wildner, deportation officer, DHS, ICE; Brendan Quinlan, Deportation Officer, DHS, ICE; Mark Graham, Deportation Officer DHS, ICE; Matthew Klienman, Mental Health Coordinator for the Division of Immigration Health

4

Services; Dennis Becotte, licensed psychologist; Jeff Rackovan, supervisory employee of the PA-DOC at SCI-Rockview; Nurse Somich; Dr. Symonds; Corrections Officer ("CO") Granlund; CO Yeager; CO Sutton; Nurse Lamas; CO Evans; and CO March.  (Doc. 25, pp. 3-7).

Plaintiff's Amended Complaint alleges numerous violations of his constitutional rights and it asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. and the Rehabilitation Act, 29 U.S.C. §794, *et seq.*  It is brought under §1331 and §1983 as well as under the ADA and Rehabilitation Act.  This Court has jurisdiction over this action under §1331 and §1343.[4]

We now screen Plaintiff's Amended Complaint as we are obliged to do under the PLRA. *See Sims v. Piazza*, 2009 WL 3147800 (M.D. Pa.); *O'Connell v. Sobina*, 2008 WL 144199 (W.D. Pa.).[5]

## II.  PLRA.

As stated, Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[6] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis*

---

[4]Plaintiff also seeks this Court to exercise its supplemental jurisdiction over his pendent state law claims under 28 U.S.C. §1367.  (Doc. 25, p. 2).  However, we do not find that Plaintiff has raised any state law claims in his Amended Complaint.

[5]The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

[6]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

pursuant to 28 U.S.C. § 1915.[7]  Specifically, Section 1915(e)(2), which was created by

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## III.  Civil Rights Standards.

### 1.  Section 1983 Standard

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009

WL 533051, *3 (M.D. Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it

is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273,

284-85 (2002).[8]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-

---

[7]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 2, 3 and 5).

[8]Plaintiff indicates in his pleading that Defendants Beard, Sabol, Buono, Miosi, Rackovan, Somich, Symonds, Granlund, Yeager, Sutton, Lamas, Evans, and March are state agents.

499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation

of a Plaintiff's constitutional rights.") citing *Rode, supra*.

   2. *Bivens Standard*

As stated, insofar as Plaintiff alleges violations of his constitutional rights by Defendants who

are federal officials, it  is a § 1331 civil rights action under *Bivens*.[9]  In *Naranjo v. Martinez*, 2009

_____

[9]The Third Circuit in *Banks v. Roberts*, 2007 WL 3096585, * 1, n. 1, 251 Fed. Appx. 774
(3d Cir. 10-19-07) (Non-Precedential) noted that, "[a] '*Bivens* action' is a commonly used phrase

WL 4268598, *6, the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.

> Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

Further, a *Bivens* action is analogous to a civil rights action under 42 U.S.C. §1983.  *Id*.;

*Reynolds v. BOP*, 2010 WL 744127, *3 (E.D. Pa.).  *See also Beattie v. Dept. of Corrections SCI-*

---

for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.  This constitutional tort theory was set out in *Bivens* . . . ."  *See also Naranjo v. Martinez*, 2009 WL 4268598, *1, n.1 (M.D. Pa.)(*Bivens* is the shorthand given to claims made against a federal agent for violations of a federal right, including constitutional rights.") (citation omitted).

*Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.")(citation omitted).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## IV. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*,2010 WL 1976821, *7 (M.D. Pa.),

the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are

9

sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
Fowler, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Discussion.

In his Amended Complaint, Plaintiff asserts the following eight (8) causes of action (Doc. 25, pp. 26-34):

1.  First Cause of Action, Eighth Amendment denial of medical care claim;

2.  Second Cause of Action, failure to protect claim under the Eighth Amendment.

3. Third Cause of Action, unconstitutional conditions of confinement claim under the Eighth Amendment;

4.  Fourth Cause of Action, unreasonable searches and seizures claim under the Fourth Amendment and Eighth Amendment;

5.  Fifth Cause of Action, due process violations under the under the Fifth and Fourteenth Amendments;

6.   Sixth Cause of Action, equal protection claim under the under the Fifth and Fourteenth Amendments;

7.   Seventh Cause of Action, claims under the ADA and Rehabilitation Act; and

8.   Eighth Cause of Action, claim under the "Federal Detention Standards."

As relief, Plaintiff requests declaratory judgment that Defendants' alleged conduct violated his constitutional rights as well as compensatory and punitive damages. (*Id.*, p. 34).  Plaintiff does not state if he sues the federal official Defendants and the state official Defendants in both their personal and official capacities.[10]

---

[10]Plaintiff cannot seek compensatory damages from the state official Defendants in both their individual and official capacities.  To the extent that Plaintiff seeks monetary damages from the state official Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities.  Therefore, all of Plaintiff's claims for monetary damages against the state actor Defendants in their official capacities should be dismissed.

Also, with respect to his *Bivens* suit, Plaintiff cannot sue the individual federal Defendants for damages in their official capacities.  *See Smith v. U.S.* ,2007 WL 7313360, *6, n. 13 (M.D. Pa.)(citation omitted); *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.)(Plaintiff inmate could not sue the BOP Defendants for monetary damages in their official capacities).  In his Amended Complaint, Plaintiff can only sue the federal official Defendants in their individual capacities with respect to his claims for damages.

In his Amended Complaint, we do not find that Plaintiff states he exhausted all his administrative remedies with respect to all of his present claims.[11]

With respect to Defendants DHS Deportation Officers Wildner, Quinlan and Graham, Plaintiff alleges that on June 17, 2008, he was released from confinement at York County Prison ("YCP") to the custody of ICE to effectuate his January 25, 2002 removal order.  After he was placed in ICE custody on June 17, 2008, Plaintiff alleges that Defendants DHS Deportation Officers Wildner, Quinlan and Graham  took him to an unspecified airport in an unspecified location to deport him from the United States to his native country of Egypt pursuant to the removal order.  Plaintiff avers that on June 17, 2008, Defendants DHS Deportation Officers Wildner, Quinlan and Graham tried to place him on the airplane but these Defendants alleged that he refused to comply with the removal order and threatened to disrupt the flight if he was placed on the plane.  (Doc. 25, pp. 7-8).  Plaintiff avers that Defendants DHS Deportation Officers Wildner, Quinlan and Graham signed a memorandum addressed to Defendant Sallemi and, that these Defendants wrote  that Plaintiff refused to comply with the removal order and threatened to disrupt the flight if he was placed on the plane.  Thus, Plaintiff avers that Defendants DHS Deportation Officers Wildner, Quinlan and Graham returned him back to YCP on June 17, 2008.  We do not find any further personal involvement as to Defendants DHS Deportation

---

[11]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Officers Wildner, Quinlan and Graham stated in Plaintiff's Amended Complaint.

We find that Plaintiff's June 17, 2008 claims as against Defendants DHS Deportation Officers Wildner, Quinlan and Graham are clearly time barred. We also find that Plaintiff has failed to state the personal involvement of Defendants DHS Deportation Officers Wildner, Quinlan and Graham with respect to the violations of any of his constitutional rights.

Plaintiff's original Complaint (Doc. 1) was filed on August 3, 2010.[12] DHS Deportation Officers Wildner, Quinlan and Graham were not named as Defendants in Plaintiff's original Complaint. These three Defendants were named parties for the first time in Plaintiff's August 24, 2011 Amended Complaint. (Doc. 25). Plaintiff's claims as against Defendants DHS Deportation Officers Wildner, Quinlan and Graham clearly arose on June 17, 2008, and they ended on June 17, 2008, when Plaintiff was returned to YCP. Plaintiff's claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham pertain to their alleged attempt to execute the removal order issued against Plaintiff, and to their alleged Memo blaming Plaintiff for not complying with the removal order.

There is a 2-year statute of limitations with respect to a civil rights action filed in Pennsylvania. This 2-year statute of limitations applies to *Bivens* actions in Pennsylvania. *See Rodriguez-Perez v. Clark*, 2010 WL 2219413 (M.D. Pa. 2-11-10) adopted by 2010 WL 2219410 (M.D. Pa. 5-28-10) appeal dismissed by 423 Fed. Appx. 118 (3d Cir. 4-13-11).

The law is clear that civil rights claims in Pennsylvania are subject to a two-year statute of limitations. *See Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D.

---

[12]Plaintiff signed his original Complaint on July 29, 2010. Doc. 1.

Pa. (October 26, 2004 Memorandum), pp. 5-6; *Mattis v. Dohman*, 260 Fed. Appx. 458, 461, n. 3(citations omitted); *Barnett v. York County*, Civil No. 11-0906, M.D. Pa. (July 14, 2011). Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994); *Beattie, supra*.

We must consider when Plaintiff's present *Bivens* claims accrued. In *Ricketts v. AW of UNICOR*, 2009 WL 2232467, *9 (M.D. Pa.), the Court stated:

> In applying the statute of limitations to a *Bivens*-type civil rights action, a federal court must employ the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n. 9 (3d Cir.1996); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir.2000) (noting that the statute of limitations for a § 1983 action and a *Bivens* action are both governed by the state statute of limitations for personal injury claims). The *Wilson* Court clarified that courts considering federal civil rights claims "should borrow the general or residual [state] statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Little v. Lycoming County*, 912 F.Supp. 809, 814 (M.D.Pa.1996). Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa. Cons.Stat. Ann. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir.1993).

> However, the date when a cause of action accrues is still a question of federal law. *Smith v. Wambaugh*, 887 F.Supp. 752, 755 (M.D.Pa.1995). Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (section 1983 action). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. *Gordon v. Lowell*, 95 F.Supp.2d 264, 272 (E.D.Pa.2000). Under *Gordon*, a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id.*

14

*See also Joyner v. BOP*, 2005 WL 3088371(two-year SOL for *Bivens* claim in Pennsylvania).

It is abundantly clear in the present case, and readily apparent from Plaintiff's amended pleading, that he discovered, or should have discovered, his claims regarding the alleged conduct of Defendants DHS Deportation Officers Wildner, Quinlan and Graham on June 17, 2008, after these Defendants tried unsuccessfully to remove Plaintiff and returned Plaintiff to YCP.

We find that Plaintiff's stated claims regarding the attempt of Defendants DHS Deportation Officers Wildner, Quinlan and Graham to remove him from the United States  are clearly time barred. As mentioned, it is readily apparent from the face of Plaintiff's Amended Complaint that his claims against the stated three Defendants accrued in June 2008.  Plaintiff did not file the instant action until August 2010. (Doc. 1).  Further, Defendants DHS Deportation Officers Wildner, Quinlan and Graham were not even named parties in Plaintiff 's original pleading.  As stated, Plaintiff first names these Defendants are parties in his recent August 24, 2011 Amended Complaint.  (Doc. 25).  Thus, Plaintiff's instant claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham were first raised in his August 24, 2011 Amended Complaint and they do not relate back to the time Plaintiff filed his original Complaint. Plaintiff's Amended Complaint does not relate back, under Fed. R. Civ. P. 15(c), to the date he filed his original Complaint (Doc. 1), *i.e.* August 3, 2010, since Defendants DHS Deportation Officers Wildner, Quinlan and Graham were not named in Plaintiff's original Complaint, and these Defendants were not named until Plaintiff filed his Amended Complaint until August 24, 2011.  *See Womack v. Smith,* 2009 WL 5214966, *2 (M. D. Pa. 12-29-09); *Valentzas v. Untied States*, Civil No. 07-1255 (M.D. Pa.).   Even if Plaintiff's new claims raised in his Amended Complaint against Defendants DHS Deportation Officers Wildner, Quinlan and Graham related back to the time Plaintiff

15

filed his original Complaint, they would still be time barred since they accrued on June 17, 2008, and Plaintiff did not file his original complaint until August 3, 2010.

We find that, in screening Plaintiff's Amended Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's stated June 2008 claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham since his allegations make clear that these claims are time barred by the applicable two-year statute of limitations. *See Rodriguez-Perez v. Clark*, 2010 WL 2219413; *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10); *Smith v. Delaware County Court*, 260 Fed. Appx. 454 (3d Cir. 2008); *Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order)(in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his allegations make clear that Plaintiff did not exhaust his administrative remedies even though exhaustion is an affirmative defense); *Barnett v. York County*, *supra* (in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's untimely civil right claims since his allegations make clear that Plaintiff did not file claims within 2-year statute of limitations).

Thus, based on the above cited cases, even though the statute of limitations is an affirmative defense, *sua sponte* dismissal of Plaintiff's June 2008 claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham  are clearly time barred.  Dismissal of Plaintiff's stated June 2008 claims is proper since his failure to timely file his stated claims is abundantly clear from the face of his Amended Complaint. Therefore, we will recommend that Plaintiff's claims regarding the attempt by Defendants DHS Deportation Officers Wildner, Quinlan and Graham to remove him from United States which occurred on June 17, 2008 and regarding Defendants' June 17, 2008 Memorandum in which they stated Plaintiff refused to board the airplane and basically thwarted his removal from the

16

United States, be dismissed with prejudice since they are clearly time barred.  Also, since the only claims Plaintiff asserts against Defendants DHS Deportation Officers Wildner, Quinlan and Graham occurred in June 2008, we will recommend that these three Defendants be dismissed from this case with prejudice.[13]

We also find that Plaintiff 's June 2008 claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham fail to state a violation of Plaintiff's constitutional rights. In *Ransome v. Mooney*, 2010 WL 2490751, *4 (M.D. Pa. 4-9-10) adopted by 2010 WL 2505891 (M.D. Pa. 6-15-10), the Court stated:

> In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) As the Supreme Court held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id.* at 555.

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In keeping with the principles of *Twombly,* the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to

---

[13]Since Plaintiff's claims against Defendants Wildner, Quinlan and Graham are time barred, we recommend that his 2008 claims against the stated three Defendants be dismissed with prejudice based on futility of any amendment.

dismiss. In *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. at 1937, 173 L.Ed.2d 868 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

Thus, following *Twombly* and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the Plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler,* 578 F.3d at 210-11.

Based on the above detailed allegations, we do not find that Plaintiff has stated a violation of a cognizable constitutional right by Defendants DHS Deportation Officers Wildner, Quinlan and Graham occurred in June 2008.  Thus, as mentioned, we will recommend that these three Defendants

18

be dismissed from this case with prejudice.

Plaintiff also raises various other allegations against several other Defendants with respect to his alleged refusal to eat food and drink fluids since June 15, 2008, and other conduct accruing in June and July 2008 when he was in custody at YCP.[14]

Plaintiff refers to his 08-MI-164, M.D. Pa., case.  In the 08-MI-164, M.D. Pa., case in which Plaintiff was  involved, on June 20, 2008, the Court granted the Petition of Prime Care Medical, Inc., for an Emergency Order permitting the force feeding of Plaintiff.  Plaintiff states that he objected to the Court's June 20, 2008 Order, and that he requested Defendants Decker, Mitra, Sallemi and John/Jane Doe[15] to permit him to travel to Hershey Medical Center so that he could be examined by Drs. Richard Levine and Martha Levine at the Eating Disorder Clinic.  Plaintiff avers that Defendants Decker, Mitra, Sallemi and John/Jane Doe refused to permit him to be transferred from YCP so that he could be evaluated at the Eating Disorder Clinic.  Plaintiff avers that consequently he had to be examined by Drs. Levine and Levine at YCP, and that this limited and restrict the ability of the doctors to properly examine him.[16]  Plaintiff avers that both Drs. Levine and Levine  issued reports on July 24, 2008, which were provided to Defendants Sabol, Buono, Miosi, Klienman, Decker, Mitra, Sallemi and John/Jane Doe, and that both doctors opined that force feeding Plaintiff would not likely be successful, and that

---

[14] Plaintiff states that he was in custody at YCP from June 17, 2008 through July 25, 2008.  (Doc. 25, p. 3).

[15]In his Parties Section of his Amended Complaint, we do not find that Plaintiff named a Defendant John/Jane Doe.

[16]The docket sheet in case 08-MI-164, M.D. Pa., reveals that the Court issued an Order on July 14, 2008, and directed DHS, Prime Care Medical and YCP to make Plaintiff available for examination by Drs. Levine and Levine on July 15, 2008.

Plaintiff had underlying medical and psychological conditions, including an eating disorder, which essentially made force feeding of Plaintiff futile.[17]

Plaintiff avers that on July 23, 2008, Defendant Mitra issued a declaration asserting that she was familiar with Plaintiff's case and his issues from the time of his incarceration by the Commonwealth through his transfer to ICE custody, and that Columbia Care Facility in South Carolina was a suitable facility for Plaintiff.

Plaintiff avers that DHS secured a forensic report from Defendant Dr. Becotte, a licensed psychologist which was dated on July 7, 2008. Plaintiff alleges that Defendant Dr. Becotte opined that Plaintiff was an "appropriate candidate for involuntary sedation" to effectuate his removal from the United States to Egypt. (Doc. 25, pp. 14-16). Plaintiff alleges that Defendant Dr. Becotte ignored how sedation would affect a person with his medical conditions and who was being forced fed *via* a nasal tube. Plaintiff states that Defendant Dr. Becotte's July 7, 2008 report was prepared at the request of Defendants Sabol, Buono, Miosi, Decker, Mitra, Sallemi and John/Jane Doe, during his confinement at YCP. As stated, Plaintiff avers that he was confined at YCP from June 17, 2008 through July 25, 2008. (Doc. 25, p. 3). Plaintiff states that he was confined at SCI-Rockview from March 24, 2009 through the present. (*Id*.). Plaintiff does not state that at any time he was transferred back to YCP.

---

[17]To the extent Plaintiff now challenges the conduct and assertions of Defendants Sabol, Buono, Miosi, Klienman, Decker, Mitra, Sallemi and John/Jane Doe regarding the Petition for an Emergency Order permitting the force feeding of Plaintiff and the Court's Order granting the Petition in the 08-MC-164, M.D. Pa. case (Doc. 25, pp. 20-21), we find that it is too late and that Plaintiff should have filed an appeal of the Order.

Plaintiff also avers that he repeatedly advised Defendants  Sabol, Buono, Miosi, Decker, Mitra,

Sallemi and John/Jane Doe that "the use of the nasal tube for feedings inflicted injury, pain, suffering

and long term damage to his nose and esophagus." (*Id*. p. 17).

Further, Plaintiff avers as follows:

68.      The Petitioner asserts that [he] informed Defendants Miosi, Mitra,
Sallemi, Sabol, Buono, John/Jane Doe and Decker that a duly authorized judge
ordered that the nasal tube not be used to feed the Petitioner, yet the Defendants
continued to use the device and delayed in informing the District Judge about the
court order resulting in extended and unnecessary harm to Plaintiff.

69.      The Petitioner asserts that he notified the Defendants Miosi, Sabol,
Buono, Mitra, Decker, John/Jane Doe that he did not wish to decline solid food.

70.      The Petitioner asserts that he was subjected to serious and substantial
physical and psychological trauma due to the Defendants' continued, extended and
unnecessary use of the nasal feeding/hydration tube that he developed an
involuntary gastric reflex that hindered his ability to orally ingest good or large
amounts of liquid.

71.      The Plaintiff asserts that he notified Defendants Miosi, Mitra,
Sallemi, Decker, John/Jane Doe that he was in need of psychological counseling
as he had received such treatment when he was at SCI Camp Hill and that his
treatment reduced his gastric reflex against ingestion of liquids and had actually
begun to ingest liquids prior to his departure from the custody of the Commonwealth.

72.      The Plaintiff asserts that inasmuch as the Defendants obtained his
medical records from the Camp Hill facility when he was transferred to immigration
custody, this information was known to them, but they have refused to provide
the Plaintiff with access to continued adequate psychological counseling to
enable hi to improve his health to a sufficient degree that use of liquid feeding
would be unnecessary.

(*Id*., pp. 17-18).

Plaintiff's allegations in his Amended Complaint as against Defendants Sabol, Buono, Miosi,

Decker, Mitra, Sallemi and John/Jane Doe, as well as Klienman and Becotte which arose between June

20, 2008 and July 24, 2008, are all time barred. *See Rodriguez-Perez v. Clark*, 2010 WL 2219413. In fact, all of Plaintiff's claims against all Defendants during his confinement at YCP are time barred and as such, are subject to dismissal. Plaintiff clearly knew of all of his claims which accrued at YCP during his confinement there.

Therefore, we will recommend that all of Plaintiff's claims in his Amended Complaint against all Defendants which accrued during his confinement at YCP from June 17, 2008 through July 25, 2008 be dismissed with prejudice since they are time barred. *See Rodriguez-Perez v. Clark*, 2010 WL 2219413. We find that all of Plaintiff's constitutional claims under *Bivens* against the federal official Defendants and that all of his constitutional claims under §1983 against the YCP officials are time barred. Further, we find that Plaintiff's Fifth Cause of Action raising due process claims under the Fifth and Fourteenth Amendment should be dismissed since they are time barred. (Doc. 25, p. 30). Thus, we find that only Plaintiff's constitutional claims against state actor Defendants at SCI-Rockview under § 1983 are timely.

Plaintiff states that on July 25, 2008, he was transferred from YCP to Columbia Care Facility in Columbia, South Carolina, and that on March 19, 2009, Defendant Decker lifted ICE's detainer on him and placed him on supervised release. Plaintiff then states that on March 23, 2009, he was released from Columbia Care Facility and placed in the custody of the PA DOC after DOC was notified by ICE that it had not able to effectuate Plaintiff's removal. (Doc. 25, pp. 22-23). Plaintiff states that he was confined in SCI-Rockview on March 24, 2009 and, that he is presently still confined at this prison.[18]

---

[18]As noted above, on August 22, 2011, we issued an R&R in Fattah's §2241 habeas case, 11-0985, challenging the legality of his current confinement at SCI-Rockview, and we recommended that Fattah's Habeas Petition be denied.

Plaintiff asserts Eighth Amendment denial of proper medical, eye and dental care claims and Eighth Amendment conditions of confinement claims against the SCI-Rockview prison staff Defendants, namely Rackovan, Dr. Symonds and Somich.  (Doc. 5, pp. 23-24).  Plaintiff claims that Defendant Granlund conducted improper searches of his cell and opened his legal material on August 22, 2010, and that he notified Defendant Rackovan about the searches.  Plaintiff also avers that Defendants Granlund, Yeager, Sutton took away his legal materials.  Plaintiff further avers that he notified Defendant Rackovan of the use of excessive force by staff when he was placed in a restraint chair for feeding.

Plaintiff avers that Defendant Nurse Lamas insulted and embarrassed him in front of prison supervisory officials and other inmates on September 14, 2010, and told Plaintiff he was not more important than other inmates and that she will see him in hell.  (*Id.*, p. 25).

Plaintiff concludes his allegations as follows:

126.    Plaintiff further notified Defendant Rackovan that he is not being provided with the prescribed pain medication.

127.    Plaintiff further provided notice to Defendant Rackovan that the change to his feeding scheduling his stomach has become damaged such that he experiences severe pain and vomits.

128.    Plaintiff further notified Defendant Rackovan that his feeding tube has been in an unsanitary condition as he has observed strands [of] hair in the feeding tube, that the dressings around his feeding tube are not changed appropriately or on schedule increasing the possibility of infection.

129.   Plaintiff further notified Defendant Rackovan that he has not received his legal papers and of the attempt by Defendant Evans, Defendant March to interfere with his legal proceedings.

(*Id.*, p. 25).

We  find that supervisory Defendant DOC Secretary Beard is impermissibly named as a party based only on *respondeat superior*.  As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009);  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)*,* repeated the personal involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have

> personal involvement in a civil rights action). Innis does not allege that
> Wilson had personal knowledge of his injury and subsequently acted with
> deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these
> claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has sufficiently stated the personal involvement

of Defendant DOC Secretary Beard with respect to any of his constitutional claims.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims.
> *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
> (2009) ("Government officials may not be held liable for unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.*" );
> *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought
> under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* )
> (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather,
> each named defendant must be shown, via the complaint's allegations, to have
> been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.
> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each
> Government-official defendant, through the official's own individual actions,
> has violated the Constitution.") "Personal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the
> 'personal involvement' requirement, a [§ 1983] complaint need only
> allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326
> F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10);  *Sims v. Piazza*, 2009

WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the

assumption of truth.")(citation omitted).

Therefore, we will again recommend that Defendant supervisory state official Beard be dismissed with prejudice.[19]  *See Pearson v. Karnes*, 2011 WL 864792, *2 (M.D. Pa. 3-9-11).

We also find that Plaintiff has failed to state the personal involvement of Defendant Nurse Lamas with respect to any violation of his constitutional rights.  Plaintiff only alleges that Defendant Nurse Lamas insulted and embarrassed him, and verbally harassed him on September 14, 2010, at SCI-Rockview infirmary.  Plaintiff does not allege that Defendant Nurse Lamas verbally insulted and embarrassed  him with any reinforcing acts, *i.e.* some action by Lamas escalating her insults beyond mere words.

As the Court stated in *Aponte v. Karnes*, 2008 WL 360879, *3 (M.D. Pa.):

> It has been recognized that the use of words generally cannot constitute an assault actionable under § 1983. *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Maclean v. Secor,* 876 F.Supp. 695, 698-99 (E.D.Pa.1995); *Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); *Jones v. Superintendent,* 370 F.Supp. 488, 491 (W.D.Va.1974).
>
> Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *Fisher v. Woodson,* 373 F.Supp. 970, 973 (E.D.Va.1973): *see also Balliet v. Whitmire,* 626 F.Supp. 219, 228-29 (M.D.Pa.) ("[v]erbal abuse is not a civil rights violation ...."), *aff'd,* 800 F.2d 1130 (3d Cir.1986). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth

---

[19]Since Plaintiff was already given one opportunity to amend his Complaint and since Defendant Beard was already dismissed with prejudice from Plaintiff 's original Complaint, we do not recommend that Plaintiff  be given a second chance to amend his pleading regarding Defendant Beard or any Defendant whom we now recommend be dismissed based on futility and undue prejudice to Defendants.  *See Ashton v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

> Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n,* 822 F.Supp. at 189, or under the Fifth Amendment's substantive due process clause, *see Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir.1991), *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991).
> Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. *See Northington v. Jackson,* 973 F.2d 1518 (10th Cir.1992) (guard put a revolver to the inmate's head and threatened to shoot); *Douglas v. Marino,* 684 F.Supp. 395 (D.N.J.1988) (prison employee threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. *Bieros v. Nicola,* 860 F.Supp. 226, 233 (E.D.Pa.1994): *see also Prisoners' Legal Ass'n,* 822 F.Supp. at 189; *Murray,* 809 F.Supp. at 384.

*See also Kimball v. Walters*, 2007 WL 87897, *7 (M.D. Pa.); *Queen v. Kreamer*, 2006 WL 931866, *2-*3 (M.D. Pa. 4-11-06).

Therefore, we will recommend that Defendant Nurse Lamas be dismissed with prejudice.

As to Defendants Evans and March, Plaintiff only avers that they attempted to interfere with his legal proceedings.   As mentioned, Plaintiff also avers that Defendants Granlund, Yeager, Sutton took away his legal materials.   In his Fourth Cause of Action (Doc. 25, p. 29), Plaintiff alleges that "Defendants searched and seized [his] legal documents and failed to provide [him] with access to his legal materials despite being informed that the materials were needed for ongoing legal proceedings." Plaintiff has failed to show his right to access to the court was violated by these five Defendants. Plaintiff has not stated any actual harm to any court proceeding as result of Defendants' alleged conduct of seizing his legal documents.

As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, *10 (W.D. Pa.), the Court stated:

In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 415.

In his Amended Complaint, Plaintiff does not allege that he suffered any actual injury to any court case due to the conduct of Defendants Evans, March, Granlund, Yeager and Sutton. Thus, since Plaintiff does not state that any underlying claims were harmed by Defendants' alleged conduct, he fails to state a claim for denial of access to the court. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential)("*Christopher* [case] requires that 'the predicate claim be described well enough to apply

the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.")(citing *Christopher* at 416); *O'Connell*, 2008 WL 144199, * 10; *Tapp v. Proto*, 404 Fed.Appx. 563, 566 (3d Cir. 2010).[20]

Therefore, we will recommended that Defendants Evans and March, as well as Defendants Yeager and Sutton, be dismissed with prejudice.  We will also recommend that Plaintiff's Fourth Cause of Action be dismissed in its entirety.

We will recommend that Plaintiff be permitted to proceed with his §1983 constitutional claims under the Eighth Amendment, *i.e.* denial of proper medical care claims and conditions of confinement claims (First and Third Causes of Action) only as against SCI-Rockview officials and staff involved with these claims, namely, Defendants Rackovan, Somich, Granlund  and Dr. Symonds.  *See Pearson v. Karnes*, 2011 WL 864792, *3-*4; *Williams v. Klem*, 2008 WL 4453100, *6-*7 (M.D. Pa.).

We find no Eighth Amendment failure to protect claim (Second Cause of Action) stated against Defendants Rackovan, Somich, Granlund and Dr. Symonds.  In *Pearson v. Karnes*, 2011 WL 864792, *3, the Court stated:

> To effectively plead an Eighth Amendment failure to protect claim, a plaintiff must allege that he endured conditions "posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977,128 L.Ed.2d 811 (1994). Additionally, the correctional officer who is alleged to violate the Eighth Amendment must have demonstrated "deliberate indifference" to the inmate's health or safety. *Id.* at 835, 114 S.Ct. at 1977. Prison officials exhibit deliberate indifference when they know of, and disregard, an excessive risk to the inmate's safety. *Id.* Therefore, negligence, or a lack of due care under the circumstances, is insufficient to support a claim that the defendants failed to protect the prisoner. *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668,

---

[20]Plaintiff's recent habeas petition filed with this Court in Civil No. 11-0985 also belies any claim that Plaintiff has been denied access to this Court.

670, 88 L.Ed.2d 677 (1986). An officer has a duty to take reasonable steps to prevent a victim from another officer's use of excessive force, but "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger,* 293 F.3d 641, 651 (3d Cir.2002).

Plaintiff does not state how Defendants Rackovan, Somich, Granlund  and Dr. Symonds each were personally aware, or should have been aware, of a substantial risk of harm to him and disregarded it. *Id.* As mentioned, Plaintiff only avers that he notified Defendant Rackovan of the use of excessive force by staff when he was placed in a restraint chair for feeding.  Based on *Pearson v. Karnes,* this allegation is not sufficient to state Eighth Amendment failure to protect claim.   Thus, we will recommend that Plaintiff's Eighth Amendment failure to protect claim (Second Cause of Action) be dismissed entirely with prejudice.

In his Fifth Cause of Action, Plaintiff asserts that his due process rights under the Fifth and Fourteenth Amendments were violated.  (Doc. 25, p. 30).  Plaintiff alleges that he was deprived of his liberty when he was unreasonably placed in suicide watch segregation and transferred to South Carolina.  Plaintiff fails to state the personal involvement of remaining Defendants Rackovan, Somich, Granlund and Dr. Symonds with respect to his due process claim.   Plaintiff indicates that he was transferred from YCP to South Carolina on July 25, 2008.  Plaintiff did not arrive at SCI-Rockview, the place where remaining Defendants were employed, until March 24, 2009.[21]

Thus, we will recommend that Plaintiff's Fifth and Fourteenth Amendments due process  claim (Fifth Cause of Action) be dismissed entirely with prejudice.

---

[21]As discussed above, we have found that all of Plaintiff's claims against Defendant YCP officials as well as against Defendant federal officials employed DHS and ICE are time barred.

In his Sixth Cause of Action, Plaintiff alleges that Defendants discriminated against him based on his race, national origin, religion and disability in violation of his rights under the Fifth and Fourteenth Amendments.  (Doc. 25, p. 31).  Plaintiff thus asserts claims under the Equal Protection Clause.

We do not find that Plaintiff has stated a cognizable Fourteenth Amendment equal protection claim.  Plaintiff claims that Defendants subjected him to insults, threats and injury on account of his race, national origin, religion and disability.  (*Id*.).  Plaintiff fails to state the personal involvement of remaining Defendants Rackovan, Somich, Granlund  and Dr. Symonds with respect to his equal protection claim.[22]

In *Tapp v. Proto*, 2010 WL 1946919, *20 (E.D. Pa.), the Court stated:

> All citizens, whether prisoner or pretrial detainee, are protected from invidious discrimination on the basis of race by the Equal Protection Clause of the Fourteenth Amendment. *See McDonnell,* 418 U.S. at 556. To state an equal protection claim, a plaintiff must show that the defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

---

[22]As discussed above, we have found that all of Plaintiff's claims against Defendant YCP officials, as well as against Defendant federal officials employed DHS and ICE, are time barred.

The elements of a § 1983 equal protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted). The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

Plaintiff has alleged facts from which it can be concluded that he is a member of protected classes, *i.e.* his race, religion and national origin. However, Plaintiff has not alleged that any named remaining Defendant engaged in intentional or purposeful discrimination. Plaintiff does not allege that

32

he was treated differently by Defendants Rackovan, Somich, Granlund and Dr. Symonds than similarly situated persons on the basis of his race, religion or national origin.  In short, Plaintiff does not allege that others similarly situated, but who were not within the protected classes, were treated differently by Defendants Rackovan, Somich, Granlund and Dr. Symonds.  Thus, there is no cognizable equal protection claim stated by Plaintiff.  *See Mendoza v. Meisel*, 270 Fed.Appx. 105, 107-08 (3d Cir. 2008)(the Court stated that Plaintiff must allege "that he was treated differently from other people who are similarly situated, which is necessary to state an equal protection claim.")(citation omitted).

Therefore, we shall recommend that Plaintiff's Fourteenth Amendment equal protection claim (Sixth Cause of Action) be dismissed as against all Defendants.

Further, we find that Plaintiff has failed to state an ADA claim (Seventh Cause of Action) against any Defendant.  As stated, Plaintiff does not indicate if he sues the twenty-one individual Defendants in both their personal capacities and their official capacities in his Amended Complaint.  Also, as stated, Plaintiff seeks, in part, monetary damages in his Amended Complaint.  We do not find that Plaintiff requests injunctive relief in his Amended Complaint.  (Doc. 25, p. 34).

In *Carpenter v. Klopotoski*, 2010 WL 981825, *4 (M.D. Pa. 3-10-10), the Court stated:

> Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S.

206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). However, the plain
language of §12132 applies only to public entities not individuals.
*Yeskey v. Commonwealth,* 76 F.Supp.2d 572, 575 (M.D.Pa.1999)
(holding that individuals are not liable under Title II because it
prohibits discrimination in programs of a "public entity" or discrimination
"by any such entity" and "public entity" is not defined in Title II to
include individuals). None of the moving defendants qualify as a public
entity. Therefore, the ADA is inapplicable to them and their motions to
dismiss will be granted.

*See also George v. PA DOC,* 2010 WL 936778, *7.

To the extent that Plaintiff is raising a claim under Title II of the ADA, 42 U.S.C.
§12132, the Court stated in *Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum,
p. 8:

Title II of the ADA prohibits a "public entity" from denying a qualified
individual with a disability participation in the services, programs, or
activities of that public entity, or access to public transportation.  42 U.S.C.
§§ 12132, 12142, 12162.

None of the Defendants are public entities.  *See Carpenter v. Klopotoski.*  Thus, Title II of the

ADA is not applicable to them.  Therefore, we will recommend that the Court dismiss with prejudice

Plaintiff's Title II ADA claim against all Defendants in their individual capacities.  *See Walker v. Brooks*,

2009 WL 3183051, *10 (W.D. Pa. 9-30-09)("individuals are not subject to liability under Titles I or II

of the ADA.") citation omitted.

In *O'Donnell v. PA DOC*, 2010 WL 455246, *3 (M.D. Pa. 2-2-10), the Court stated:

Magistrate Judge Smyser also recommended that this Court dismiss O'Donnell's
claims under the ADA to the extent that she seeks relief against Beard,
Moore, Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas
in their individual capacities. However, pursuant to the dictates of
*Koslow v. Pennsylvania,* 302 F.3d 161, 179 (3d Cir.2002) (concluding that
"federal ADA claims for prospective injunctive relief against state
officials are authorized by the *Ex parte Young* doctrine"), the magistrate
judge recommended that O'Donnell's claims for injunctive relief against the
above officials in their official capacities be allowed to continue. (Rec. Doc.
No. 161 at 14).

34

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> The plain language of the ADA evinces an intent by Congress that the statute only apply to public entities, *see* 42 U.S.C. §12132, and it is clear that the *Ex parte Young* doctrine allows for ADA claims to proceed against state officials in their official capacities when such claims are for prospective injunctive relief, *see Koslow*, 302 F.3d at 179. As such, we agree with the magistrate judge that O'Donnell's ADA claims against Beard, Moore, Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas in their individual capacities should be dismissed, ... .

Thus, we will recommend that Plaintiff's ADA claim be dismissed entirely with prejudice as against all Defendants. *Id.*

Additionally, as the *Walker* Court held, "[c]ourts within [the Third Circuit] have held that individuals cannot be held liable under the Rehabilitation Act." 2009 WL 3183051, \*10. As such, we will recommend that Plaintiff's Rehabilitation Act claim be dismissed with prejudice as against all Defendants.

In his final cause of action, Eighth Cause of Action, Plaintiff asserts a claim that Defendants violated his rights under the "Federal Detention Standards." (Doc. 25, p. 33). Plaintiff avers that Defendants disregarded his rights as a detainee. Plaintiff states that Defendants' actions ... in violation of the federal detention standards give rise to a cause of action for damages direction (sic) under the U.S. Constitution," federal statute and/or §1983. (*Id.*). Plaintiff does not provide a cite to the "Federal Detention Standards" to which he is referring. In any event, we find that Plaintiff is raising his Eighth Cause of Action, namely that Defendants' alleged conduct violated "the rights extended to the Plaintiff as a detainee covered by the Federal Detention Standards," only against the federal official Defendants. As such, Plaintiff does not state the personal involvement of SCI-Rockview Defendants Rackovan,

Somich, Granlund and Dr. Symonds with respect to his Eighth Cause of Action.  Further, Plaintiff does not state the exact nature and length of his alleged detention which violated his rights under the "Federal Detention Standards," however, we construe this claim to relate to Plaintiff 's detention when he was in federal custody seemingly from June 2008 through March 2009.[23]

Thus, we will recommend that Plaintiff's Eighth Cause of Action be dismissed.

## VI. Recommendation.

Based on the foregoing, it is respectfully recommended that all of Plaintiff's constitutional claims against Defendants DHS Deportation Officers Wildner, Quinlan and Graham be dismissed with prejudice since they are time barred.  It is also recommended that all of Plaintiff's constitutional claims against Defendant Dr. Becotte and Defendants Sabol, Buono, Miosi, Decker, Mitra, Klienman and Sallemi which arose during his confinement at YCP from June 17, 2008 through July 25, 2008 be dismissed with prejudice as time barred.  Further, it is recommended that Defendant DOC Secretary Beard and Defendant Nurse Lamas be dismissed with prejudice.  Additionally, it is recommended that Defendants Evans and March, as well as Defendants Yeager and Sutton, be dismissed with prejudice.

It recommend that Plaintiff's Rehabilitation Act claim and ADA claim (Seventh Cause of Action) be dismissed with prejudice as against all Defendants.

---

[23] Insofar as Plaintiff Fattah is deemed as challenging his present confinement at SCI-Rockview as illegal, as noted, on August 22, 2011, we issued an R&R in Fattah's case number 11-0985, his Habeas Corpus Petition pursuant to 28 U.S.C. § 2254, and we recommended that Fattah's Habeas Petition be denied.   To the extent, Plaintiff seeks to challenge his prior confinement when he was in federal custody as illegal, such a claim had to be brought in a Habeas Corpus Petition pursuant to 28 U.S.C. § 2241.   However, since it appears that Plaintiff is no longer in federal custody, it may now be too late for Plaintiff to file a §2241 habeas petition. *See Defoy v. McCullough*, 393 F.3d 439, 441-442 (3d Cir. 2005).

Thus, it is recommended that Plaintiff's Second, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action be dismissed with prejudice.

Finally, it is recommended that Plaintiff be permitted to proceed with his Eighth Amendment constitutional claims under §1983, *i.e.* denial of proper medical care claims and conditions of confinement claims (First and Third Causes of Action)  only as against SCI-Rockview officials and staff, namely, Defendants Rackovan, Somich, Granlund and Dr. Symonds.


          **s/ Thomas M. Blewitt**
          **THOMAS M. BLEWITT**
          **United States Magistrate Judge**

**Dated: September 14, 2011**

37

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-10-1607** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN DOE #1, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 14, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                    s/ Thomas M. Blewitt
                        _____    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**


**Dated:   September 14, 2011**