## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ABDEL FATTAH,

      Plaintiff,

      v.

JOHN T. SYMONS, D.O., et al.,

      Defendants.

CIVIL ACTION NO. 3:10-CV-01607

(CAPUTO, J.)
(SAPORITO, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

This is a prisoner civil rights action. The plaintiff, Abdel Fattah, is represented by counsel. At the time of his alleged injury, Fattah was incarcerated at SCI Rockview, located in Centre County, Pennsylvania.

In his third amended complaint, Fattah claims that, while detained over a period of years in the custody of the U.S. Department of Homeland Security and the Pennsylvania Department of Corrections, he sustained substantial physical, mental, and emotional injuries as a result of the deliberate indifference of various defendants to his medical treatment needs. Fattah's *Bivens*[1] claims against various federal defendants have been dismissed, as well as claims brought under the

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Americans with Disabilities Act and the Rehabilitation Act. Most of Fattah's § 1983 claims were dismissed as well. He was, however, permitted to proceed with § 1983 claims against four defendants employed by or affiliated with the Pennsylvania Department of Corrections. One of these four remaining defendants in this case is John T. Symons, D.O., a member of the medical staff at SCI Rockview during the period of Fattah's incarceration there.[2]

Dr. Symons has filed a motion to dismiss the third amended complaint as against him for failure to state a claim. (Doc. 121). The motion is fully briefed and ripe for disposition. (*See* Doc. 127; Doc. 130; Doc. 133).

---

[2] We note that the third amended complaint includes allegations and causes of action against defendants and in support of claims previously dismissed with prejudice. A comprehensive recital of these defendants and claims previously dismissed with prejudice may be found in this Court's Order of March 23, 2012. (Doc. 35). The scope of the surviving claims and active defendants is concisely described in the Court's subsequent Order of February 13, 2014: "Plaintiff may PROCEED with his Eighth Amendment constitutional claims under § 1983, *i.e.*, denial of proper medical care and conditions of confinement claims (First and Third Causes of Action), only as against Defendants Rackovan, Somich, Granlund, and Dr. Symon[]s." (Doc. 61). Dr. Symons's motion papers address the previously dismissed causes of action as well, but we limit our analysis and recommendation here to the First and Third Causes of Action as against Dr. Symons alone.

## I.   BACKGROUND

Fattah was incarcerated at SCI Rockview between March 2009 and August 2013. Immediately prior to that, he had been in the custody of federal immigration authorities for several years as they attempted, unsuccessfully, to effect a removal order issued by a federal immigration judge. While in federal custody, Fattah was diagnosed with an eating disorder and underwent surgery to implant a gastric feeding tube that permitted him to be force fed without injury—previously, he had been force fed through a nasal feeding tube, which had resulted in injury to his nasal passages and lungs. When federal officials determined in March 2009 that Fattah's removal would not succeed, they released him back into the custody of the Pennsylvania Department of Corrections, and he was confined at SCI Rockview until August 2013. While at SCI Rockview, Fattah alleges that he was placed in unsanitary living conditions that subjected his gastric incision to infection, that improperly executed gastric feedings caused him severe pain, that his gastric feedings were being conducted in an unsanitary manner, that his medication was improperly administered, that his medically necessary dietary needs were ignored, that he was denied

necessary medical, psychological, and dental treatment, that he was routinely subjected to excessive force in connection with feedings, that he was deprived of legal papers in retaliation for exercising his right of access to the courts, and that he was harassed and otherwise mistreated by correctional officers and prison medical staff.

## II.   RULE 12(B)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

This is Dr. Symons's second Rule 12(b)(6) motion to dismiss. His first such motion, filed in response to the second amended complaint

(Doc. 59), was granted and the second amended complaint was dismissed as against Dr. Symons, with leave to file a curative amendment. (Doc. 115; Doc. 116; *see also* Doc. 105). The second amended complaint was dismissed as against Dr. Symons on the ground that it failed to adequately allege his personal involvement in the allegedly unconstitutional conduct for which the plaintiff seeks relief. In particular, the second amended complaint named Dr. Symons as a defendant but referenced him only twice: once in identifying him as a defendant, and a second time in alleging that he provided medical instructions that Fattah be given milk with his medication.

On October 15, 2015, the plaintiff filed his third amended complaint, seeking to remedy this pleading deficiency. (Doc. 119). The third amended complaint is largely identical to the second amended complaint—indeed, it appears to be a photocopy of the second amended complaint with several additional paragraphs regarding Dr. Symons cut-and-pasted into it. (*Compare* Doc. 119 *with* Doc. 59). The new material is set forth below, in its entirety:

> 130. The Plaintiff asserts that he was examined by Defendant Symons within the first week of his arrival at the Rockview facility and that Defendant Symons was aware of his medical condition, namely his eating

disorder, his surgery in South Carolina for the implantation of a "J" tube, his inability to ambulate or sustain independent mobility on a regular basis, his psychological/psychiatric diagnoses and his back and knee injuries.

131.   The Plaintiff asserts that Defendant Symons assumed and/or was given primary responsibility for his medical care while at Rockview sufficient to permit him to set up a treatment plan, order specific methods of care for his medical needs, prescribe medications and other responsibilities permissible given his role as a medical practitioner.

132.   The Plaintiff asserts that Defendant Symons did not specify a treatment plan for the Plaintiff's medical needs.

133.   The Plaintiff asserts that within the first week of his arrival at Rockview, he was called to a meeting with Defendant Symons, the Superintendent, Deputy Marsh and others and was told that he had two options for his medical care, feed himself voluntarily or be strapped down and be forced fed. Further the Plaintiff was told that if he chose to "voluntarily" feed himself, the necessary supplies would be provided to him.

134.   The Plaintiff asserts that Defendant Symons did not assert any objections to that plan for his feeding or the representation that supplies necessary for his "voluntary" self feeding, if he selected that option, would be provided.

135.   The Plaintiff asserts that Defendant Symons did not provide instructions or a demonstration as to how to undertake his "voluntary" self feedings.

136.   The Plaintiff asserts that his condition worsened during the period of "voluntary" self feedings

and he became emaciated and malnourished.

137. The Plaintiff asserts that he informed Defendant Symons orally and through the grievance process about his deteriorating medical condition while under the "voluntary" self feeding period of about 2 months and no action was taken by Defendant Symons to provide Plaintiff with proper nutrition.

138. The Plaintiff asserts that he experienced unnecessary severe pain and suffering [r]elated to his malnutrition and emaciation during this time and that he informed Defendant Symons about his pain and suffering orally and through the grievance process without receiving any medical assistance or intervention from Defendant Symons during that time.

139. The Plaintiff asserts that after approximately two months of self feeding, he was switched to forced feedings undertaken by nurses who failed to keep the feeding syringe/tube and bodily entry point clean.

140. The Plaintiff asserts that Defendant Symons observed his forced feedings, the condition of his feeding syringe/tube and the portion of his body connected to the feeding tube and was aware of the unsanitary condition of the feeding tube by direct observation and the Plaintiff's notification to him of the unsanitary condition of the device.

141. The Plaintiff asserts that he expressed concern about the uncleanliness of his forced feeding process to Defendant Symons, but he took no action to correct the problem. The unsanitary condition of the feeding syringe/tube resulted in the Plaintiff's acquisition of an infection in the area of the entry point of the feeding tube into his body on at least 3 occasions.

142. The Plaintiff asserts that the acquisition of an

infection caused him to suffer unnecessary severe pain and suffering that Defendant Symons had reason to anticipate, yet no precautionary measures were undertaken by Defendant Symons resulting in Plaintiff's infection and severe pain and suffering and once made aware of the Plaintiff's infection no timely action was taken to address the infection.

143. The Plaintiff asserts that in addition to his direct oral notification to Defendant Symons regarding his infection, he also filed grievances in accord with prison procedure and received no timely reply from Defendant Symons or timely action from Symons.

144. The Plaintiff asserts that he notified Defendant Symons about the poor quality of the air in the housing unit where he lived, specifically, he informed Defendant Symons about the lack of ventilation, horrid smells, and mold. Defendant Symons took no action to address the Plaintiff's concerns.

145. The Plaintiff began to experience bouts of breathing distress and coughing about which Defendant Symons was made aware orally and in the form of grievances filed with the prison, but took no action to address the Plaintiff's medical difficulties.

146. The Plaintiff asserts that his condition deteriorated so severely that his incessant and loud coughing began to disturb others in his housing unit and only after that point did Defendant Symons respond by issuing an order for the Plaintiff to be X-rayed whereupon it was discovered that he had several broken ribs due to the severe coughing.

147. The Plaintiff asserts that he experienced unnecessary severe pain and suffering due to the coughing, that resulted in the broken ribs. The Plaintiff

asserts that he received no treatment for the broken ribs and was told by Defendant Symons that the broken ribs would heal itself and during that process, the Plaintiff asserts that he experienced unnecessarily severe pain and suffering, The Plaintiff asserts that he provided direct oral notification to Defendant Symons regarding his pain and suffering and submitted grievance forms to which Defendant Symons prescribed pain medication. Plaintiff asserts that he informed Defendant Symons that the pain medication did not alleviate his pain orally and through grievances, but no further effort to address his severe pain and suffering was undertaken by Defendant Symons.

148. The Plaintiff asserts that due to the poor quality of air in his housing unit, he developed asthma, a condition he had never suffered prior to entering the Rockview facility. The Plaintiff asserts that he notified Defendant Symons about his asthmatic symptoms and that the Plaintiff was diagnosed as suffering from the condition by Defendant Symons.

149. The Plaintiff asserts that Defendant Symons did not respond to the Plaintiff's request to be transferred from the housing unit where he suffered from the poor quality of air. The Plaintiff further asserts that Defendant Symons prescribed an inhaler for the Plaintiff to address his asthmatic condition. Shortly thereafter, the Plaintiff asserts that he informed Defendant Symons orally and through the grievance process that the inhaler was not working to address his condition, yet no effort was undertaken to change his prescription for a substantial period of time. The Plaintiff asserts that Defendant Symons eventually changed his inhaler prescription 2-3 times to no avail, eventually obtaining a prescription from a source outside of the facility which better addressed the Plaintiffs asthmatic condition.

150. The Plaintiff asserts that his receipt of the proper inhaler prescription was delayed unnecessarily due to Defendant Symons desire to utilize lower quality medications that were readily available at the prison for solely cost saving purposes at the expense of his medical care and that the delay caused him to experience unnecessary severe pain and suffering. The Plaintiff asserts that Defendant Symons had reason to know that the proper medication could only be obtained outside of the facility but permitted the Plaintiff's medical condition to deteriorate unnecessarily.

151. The Plaintiff asserts that Defendant Symons sought to address the prison under staffing problem when scheduling Plaintiff's forced feedings by giving him double portions of liquid food within a short period of time, twice a day, instead of single feedings four times a day which overloaded the Plaintiff's stomach which caused the Plaintiff to vomit and which resulted in his loss of weight.

152. The Plaintiff asserts that his vomiting caused embarrassment and humiliation and resulted in unnecessary stress and strain on his body which caused him to suffer unnecessary severe pain and suffering. The Plaintiff asserts that he objected to the scheduling of his feedings directly to Defendant Symons orally and through the grievance process, but his concerns were ignored.

153. The Plaintiff asserts that he was denied food of any kind from October 8, 2010 through November 1, 2010 without explanation. He further asserts that he was denied food from November 4 through November 9, 2010 without explanation. The Plaintiff asserts that he informed Defendant Symons that he was being denied food and his concern was ignored by Defendant Symons.

154. The Plaintiff asserts that the denial of food to him during the periods mentioned was not undertaken for any legitimate medical purpose and that Defendant Symons did not articulate any medical purpose when informed about the fact that the Plaintiff had been denied food. Defendant Symons let the situation continue without any intervention on the Plaintiff's behalf, in disregard of the Plaintiff's medical needs, resulting in Plaintiff's experience of unnecessary severe pain and suffering, loss of weight, emaciation and malnutrition all of which jeopardized the Plaintiff's medical condition and resulted in his experience of unnecessary severe pain and suffering.

(Doc. 119, at 25–31).

These newly added allegations clearly allege personal involvement by Dr. Symons in the allegedly wrongful conduct—by his direct participation in it, by his personal direction of his subordinates' conduct, and by his knowledge and acquiescence in the conduct of his subordinates. *See generally Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That issue, which dictated the disposition of Dr. Symons's previous motion to dismiss the second amended complaint, has been addressed by the more robust allegations of the third amended complaint.

Dr. Symons now moves to dismiss the third amended complaint for failure to state a claim, arguing that Fattah has failed to allege

sufficient facts to plausibly state an Eighth Amendment claim of deliberate indifference by Dr. Symons to Fattah's serious medical needs.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There are different standards for Eighth Amendment violations depending on the type of claim. An Eighth Amendment challenge to prison conditions such as this is subject to the deliberate indifference standard. *See id.* at 835–36. Prison officials are deliberately indifferent when they know of and disregard a substantial risk of harm to a prisoner. *Id.* at 836. Moreover, a prisoner must produce evidence of serious or significant physical or emotional injury resulting from the challenged prison condition. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.

1995).

> To be liable on a deliberate indifference claim, a defendant prison official must both "know[] of and disregard[] an excessive risk to inmate health or safety." The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting and citing *Farmer*, 511 U.S. at 837–38, 842, 844) (citations omitted) (alterations in original).

To state a cognizable Eighth Amendment claim for improper medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *West*

*v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

With respect to the serious medical need prong of the *Estelle* standard, a serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 825.

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

With respect to the deliberate indifference prong of the *Estelle* standard, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.

1987). A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Id.* at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, a prison doctor's use of a different treatment regimen than that prescribed by a private physician does not amount to deliberate indifference. *Johnson v. Cash*, 557 Fed. App'x 102, 104 (3d Cir. 2013) (per curiam) (citing *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The key question is whether the defendant provided the inmate with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer*, 685 F. Supp. at 1339. The complaint must allege that the defendant "knows of the prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez v. Corr. Med.*

*Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012).

In the third amended complaint, Fattah identifies several different instances in which he claims Dr. Symons exhibited deliberate indifference to Fattah's serious medical needs.

Fattah contends that Dr. Symons was deliberately indifferent to his serious medical needs because Dr. Symons failed to "set up a treatment plan, order specific methods of care for [Fattah's] medical needs, [and] prescribe medications." (Doc. 119, at 26). Fattah further contends that Dr. Symons was deliberately indifferent to his serious medical needs because he failed to object to a plan for his feeding that presented Fattah with two options: voluntarily self-feed himself or be strapped down and force-fed through his "J" tube. (*Id.*). There is no dispute that Fattah's eating disorder constitutes a serious medical need, but Fattah has not alleged that Dr. Symons failed to provide treatment for Fattah's eating disorder—he merely challenges the particular course of treatment he received, which does not rise to the level of an Eighth Amendment violation. *See Lanzaro*, 834 F.2d at 346; *Farmer*, 685 F. Supp. at 1339.

Fattah contends that Dr. Symons was deliberately indifferent to

his serious medical needs because Dr. Symons failed to correct "unsanitary condition[s]" with respect to Fattah's surgically implanted feeding tube and the gastric feeding process used to provide him with nourishment. (Doc. 119, at 27–28). Fattah alleges that he complained about these unsanitary conditions to Dr. Symons on several occasions, that Dr. Symons directly observed the unsanitary conditions himself, that Fattah suffered from at least three separate infections as a result of these unsanitary conditions, and that Dr. Symons failed to timely address the resultant infections. (*Id.*). Although an infection does not necessarily rise to the level of a serious medical need, *see Williams v. Prison Health Care Sys.*, 2011 WL 4859994, at *4 (W.D. Pa. Oct. 13, 2011), given the location of the alleged infections—at the site of Fattah's gastric incision and surgically implanted "J" tube—and the repeated or recurrent nature of these infections, and viewing the allegations of the third amended complaint in the light most favorable to the plaintiff, Fattah has plausibly pleaded a serious medical need. He has not, however, alleged that Dr. Symons refused to provide treatment, only that it was delayed, and he has not alleged that it was delayed for improper reasons. *See Lopez*, 499 Fed. App'x at 146. As pleaded, the

allegedly unsanitary condition of Fattah's feeding tube amounts to nothing more than mere negligence, which is not cognizable under the Eighth Amendment. *See Lanzaro*, 834 F.2d at 346.

Fattah contends that Dr. Symons was deliberately indifferent to his serious medical needs because Dr. Symons failed to take action to remedy the "poor quality of the air" in Fattah's cell, which caused Fattah to suffer asthma attacks and bouts of coughing so violent that he broke his ribs. (Doc. 119, at 28–30). Asthma can be a severe affliction, but standing alone, the mere allegation of asthma is not a serious medical need. The complaint must allege that an inmate's asthma, left untreated, would have led to substantial and unnecessary suffering, injury, or death. *See Arnold v. Phillips*, Civil Action No. 10-5090, 2012 WL 2945235, at *3 (E.D. Pa. July 19, 2012); *Lindsey v. Brady*, 537 F. Supp. 2d 666, 671 (D. Del. 2008); *see also Davis v. Thomas*, 558 Fed. App'x 150, 155 (3d Cir. 2014) (per curiam); *Gray v. Wakefield*, Civil No. 3:09-cv-0979, 2012 WL 4509752, at *6 (M.D. Pa. Sept. 28, 2012); *Hill v. Lappin*, Civil No. 3:CV-11-1609, 2012 WL 4069802, at *9 (M.D. Pa. Sept. 17, 2012). Here, Fattah has alleged that his asthma attacks were so severe, and his coughing bouts so violent, that he broke several ribs.

Under these circumstances, Fattah has plausibly pleaded a serious medical need. *See Gonzalez v. Sweeney*, Civil Action No. 04-5482, 2006 WL 1824137, at *4 n.3 (E.D. Pa. June 28, 2006) (finding broken ribs constituted a serious medical need). But Fattah has not pleaded a refusal to provide medical treatment; he alleges only that Dr. Symons attempted to treat Fattah's asthma with "lower quality" inhalers before turning to a more expensive alternative that worked to Fattah's satisfaction, and that Dr. Symons treated Fattah's broken ribs with pain medication only. This is nothing more than a challenge to the particular course of treatment Fattah received, which does not rise to the level of an Eighth Amendment violation. *See Lanzaro*, 834 F.2d at 346; *Farmer*, 685 F. Supp. at 1339; *see also Winslow v. Prison Health Servs.*, 40 Fed. App'x 671, 674–75 (3d Cir. 2011) (per curiam) (holding that consideration of cost in choosing treatment alternatives does not constitute deliberate indifference); *Vernon v. Hyde*, No. 1:13-cv-0936, 2016 WL 4011269, at *6 (M.D. Pa. July 27, 2016) (finding that an inmate's disagreement with a physician's course of treatment in prescribing one form of asthma inhaler instead of another, more effective one does not constitute deliberate indifference to a prisoner's

serious medical needs).

Fattah contends that Dr. Symons was deliberately indifferent to his serious medical needs because, on multiple occasions, despite Fattah's protestations, he directed his subordinates to overfeed Fattah, force-feeding him a double-helping of nourishment twice a day instead of the four regular gastric feedings typically provided, causing Fattah to vomit and suffer pain. (Doc. 119, at 30). We find that these allegations plausibly plead "the unnecessary and wanton infliction of pain." *See Hudson*, 503 U.S. at 5. Fattah further alleges that he was denied food for several days or weeks at a time without explanation, that he complained about this to Dr. Symons, and that Dr. Symons failed to reinstate Fattah's scheduled gastric feedings. (*Id.* at 30–31). Here too we find that these allegations plausibly plead the denial of the minimal civilized measure of life's necessities. *See Robinson v. Sobina*, 2011 WL 6056894, at *8 (W.D. Pa. Dec. 6, 2011) (finding that the denial of food for five days may constitute cruel and unusual punishment).

Based on the foregoing, Fattah has plausibly stated a colorable claim of deliberate indifference by Dr. Symons to Fattah's serious medical needs.

## IV.  RECOMMENDATION

For the foregoing reasons, we recommend that:

1.    Dr. Symons's motion to dismiss the third amended complaint (Doc. 121) be **DENIED**;

2.    Dr. Symons and the other remaining defendants be directed to respond to the third amended complaint **within fourteen (14) days**, as prescribed by Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure; and

3.    The matter be remanded to the undersigned for further proceedings.

Dated: September 12, 2016           ***s/ Joseph F Saporito, Jr.***
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ABDEL FATTAH,

      Plaintiff,

      v.

JOHN T. SYMONS, D.O., et al.,

      Defendants.

CIVIL ACTION NO. 3:10-CV-01607

(CAPUTO, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated September 12, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: September 12, 2016          ***s/ Joseph F. Saporito, Jr.***
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge