# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDEL FATTAH, | |
| Plaintiff, | NO. 3:10-cv-1607 |
| v. | (JUDGE CAPUTO) |
| JEFF RACKOVAN, *et al.*, | |
| Defendant. | |

## MEMORANDUM

Presently before me is Magistrate Judge Arbuckle's Report and Recommendation ("R&R") (Doc. 202) regarding Defendants Rackovan, Somich, and Granlund's Motion for Summary Judgment (Doc. 155). Plaintiff Abdel Fattah, a prisoner at SCI Rockview, claims that Rackovan, Somich, and Granlund (the "Defendants") violated his civil rights. The Defendants moved for summary judgment, arguing that Fattah failed to exhaust administrative remedies at the prison and that Fattah has not produced evidence supporting his claims. (*See* Doc. 158). I will adopt Magistrate Judge Arbuckle's Report and Recommendation in full, as the Defendants did not violate Fattah's constitutional rights to adequate medical care and safe conditions of confinement under the Eighth Amendment. The Defendants' Motion for Summary Judgment will therefore be granted.

## I. Background

The parties are familiar with the facts, so I provide here only a brief background. (I will address additional facts as they become relevant to my analysis of Fattah's specific objections.) During the time period relevant to this action, Fattah was an inmate at the State Correctional Institution at Rockview ("SCI-Rockview"). (*See* Doc. 119, at 3).While incarcerated, Fattah developed an eating disorder, and as a result, had a feeding tube implanted. (*See* Doc. 196-2). Fattah filed grievances

regarding a number of matters during his time at SCI Rockview, which can be categorized two ways: medical grievances and grievances about the conditions of his confinement, *i.e.,* detention in a suicide cell. (*See* Doc. 196-7, at 4-6). Fattah's medical grievances stated, *inter alia*, Somich and other members of the medical staff at SCI-Rockview did not: (1) provide his medication with milk as instructed by his medical provider, Dr. Symons, (2) administer his medication on schedule, causing pain and vomiting, or (3) use sanitary syringes to complete his gastric feedings. (*See id.* at 4-5*)*. In Fattah's confinement grievances, he alleged, *inter alia*, Granlund placed him in a suicide cell and clothed him in a suicide smock. (*See id.* at 5-6). Accordingly, Fattah filed this action. (*See* Doc. 1).

Fattah has since amended his complaint three times, and the operative complaint is the Third Amended Complaint. (*See* Doc. 119). After a lengthy period of motions practice, only two causes of action remain, *i.e.,* the Defendants violated Fattah's Eighth Amendment right to medical care and Eighth Amendment right to safe conditions of confinement. (*See* Docs. 35, 61, 144, 145). The only remaining Defendants in this case are: Rackovan, Somich, Granlund, and Dr. Symons[1]. (*See id.*).

The Defendants moved for summary judgment in December 2017, filing a Brief in Support (Doc. 158) and a Statement of Facts (Doc. 159). In response, Fattah filed a Brief in Opposition (Doc. 180-1), and a two page response to the Defendants' Statement of Facts (Doc. 179). When the Defendants failed to comply with one of the Middle District of Pennsylvania's Local Rules, Magistrate Judge Arbuckle, acting *sua sponte*, gave the Defendants leave to file compliant evidentiary exhibit indices in support of their Motions for Summary Judgment. (*See* Docs. 173). The Defendants timely did so. (*See* Docs. 176-78). In answering the Defendants' Statements of Facts, however, Fattah also failed to comply with one of the Middle District of Pennsylvania's Local Rules. (*See* Doc. 179). In light of this error, Magistrate Judge

---

[1] Dr. Symons filed a separate a motion for summary judgment. (*See* Doc. 156).

Arbuckle, proceeded to issue a Report and Recommendation granting the Defendants' Motion for Summary Judgment, which rested upon deeming Defendants' facts admitted. (*See* Doc. 187 at 40).

I rejected Magistrate Judge Arbuckle's Report and Recommendation after concluding that it was inequitable for the Defendants to receive a chance to remedy a failure to comply with the Local Rules when Fattah was not afforded the same opportunity. (Doc. 193). I granted Fattah a similar opportunity to cure his noncompliance with Local Rule 56.1 and recommitted the matter to Magistrate Judge Arbuckle for further proceedings. (*See* Doc. 193). Fattah timely complied. (*See* Docs. 194-196). Magistrate Judge Arbuckle proceeded to recommend that summary judgment be granted in favor of the Defendants, because Fattah has not demonstrated as a matter of law any violation of either his Eighth Amendment right to medical care or his Eighth Amendment right to safe conditions of confinement. (*See* Doc. 202). Fattah objected to the Report and Recommendation. (*See* Doc. 203). The Report and Recommendation and the objection is thus now ripe for review.

## II. Legal Standard

A. Review of the R&R

If objections to a magistrate judge's R&R are filed, I must conduct a *de novo* review of the R&R's contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)). I may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits me to rely on the recommendations of the magistrate judge to the extent I deem it proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the least, courts should review uncontested portions for clear error or

manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### B. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The

nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

As explained by Magistrate Judge Arbuckle, the operative complaint is best construed as asserting the following claims against the Defendants: (1) Rackovan is liable for the allegedly unconstitutional acts committed by Somich, Granlund, and other DOC staff members as a "supervisor" who had actual knowledge of and acquiesced to the conduct of his subordinates (*See* Doc. 202, at 13-14 ), (2) Somich is liable for violating Fattah's Eighth Amendment right to medical care (*See* Doc. 202, at 14-15), and (3) Granlund is liable for violating Fattah's Eighth Amendment right to safe conditions of confinement (*See* Doc. 202, at 15-16).[2]

A. Jeff Rackovan

Magistrate Judge Arbuckle recommended summary judgment be granted with respect to all claims against Rackovan, because Fattah did not exhaust the available administrative remedies against Rackovan and failed to articulate a proper claim of supervisory liability for the conduct of Defendants Somich, Granlund, and other DOC staff members. (Doc. 202, at 25). I will adopt this portion of Magistrate Judge Arbuckle's Report and Recommendation in full.

Fattah failed to exhaust his administrative remedies against Rackovan. The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a). "The

---

[2] Fattah did not object to Magistrate Judge Arbuckle's analysis of which claims have been asserted against each Defendant, so I will proceed with the same analysis.

5

Supreme Court has held that this exhaustion requirement is mandatory and that a prisoner must properly exhaust administrative remedies." *Kantamanto v. King*, 651 F. Supp. 2d 313, 321 (E.D. Pa. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 85, 90–92 (2006)). "[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). "Proper exhaustion requires pursuing a grievance through all available levels of appeal." *Kantamanto*, 651 F. Supp. 2d at 321 (citing *Woodford*, 548 U.S. at 89, 93; *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir.2004)). Federal courts must analyze exhaustion "within the applicable prison grievance system." *Spruill*, 372 F.3d at 231. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

In objecting to Magistrate Judge Arbuckle's finding on proper exhaustion, Fattah explains how he stated in his deposition that the Defendants have not provided an accurate record of the grievances that he filed "based on his own recollections." (Doc. 203, at 9). Fattah relies on *Paladino v. Newsome* to demonstrate that this sworn statement presents a genuine dispute of material fact regarding whether he exhausted his administrative remedies against Rackovan. 855 F.3d 203 (3d Cir. 2018). In *Paladino*, the plaintiff stated in his deposition that "he filed 'numerous forms' and 'appealed numerous responses' that "vanished after being properly submitted and/or filed." *Id.* at 206. He further stated that many of his grievances, specifically related to the use of excessive force, had gone missing. *Id.* The Third Circuit held that the plaintiff's sworn statements were sufficient to create a material dispute, because they set forth specific facts regarding the use of excessive force. *Id*. at 209-210. Fattah analogizes *Paladino* to his case, because he "stated at deposition that he filed approximately 5000 [sic] grievances while at Rockview," but "[t]he Defendants have only presented evidence as to 80 odd grievances." (Doc. 197 at 11).

6

Here, the Pennsylvania Department of Corrections Policy, which applies at SCI-Rockview, provides a three-step process for the resolution of inmate grievances. (Doc. 196-7, at 9-10 ¶ 7). The grievance policy, in relevant part, states:

> The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance . . . The inmate will also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law. If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.

(Doc. 196-7, at 10 ¶ 7). The Defendants have provided a record of eighty-four (84) grievances filed by Fattah, none of which include any allegation of a concern about Rackovan's behavior. (Doc. 196-7, at 3 ¶¶ 7-8). While it is true that Fattah did state in his deposition that he filed "approximately thousand [sic] grievance [sic]," he does not specifically state that any of these grievances involved the actions of Rackovan or his knowledge or acquiescence in the misdeeds of Somich and Granlund. (Doc. 196-2, p 80:4-16). There is no other evidence that suggests Fattah filed a grievance against Rackovan. Thus, Fattah's statements about the thousands of missing grievances that he filed are insufficient to create a genuine dispute regarding whether Fattah exhausted his administrative remedies against Rackovan before pursuing this action.

Fattah's theory of *respondeat superior* liability against Rackovan, due to his involvement in the grievance process, also fails. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir.2004). "[A]ctual knowledge can be inferred from circumstances other than actual sight." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995). Acquiescence occurs when

7

"a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so..." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Nevertheless, an official who actually knew of a substantial risk to inmate health or safety will not be liable where the official acted reasonably in response, even if the harm ultimately ensues. *Reese v. Ginocchetti*, No. 3:CV-05-0452, 2006 WL 618440, at *2 (M.D. Pa. Mar. 8, 2006). Furthermore, "where actual supervisory authority is lacking, mere inaction, in most circumstances, does not reasonably give rise to a similar inference." *Id.* "Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement." *Hodge v. United States*, No. 3:06CV1622, 2007 WL 2571938, at *13 (M.D. Pa. Aug. 31, 2007); *see also Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) (" an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.").

In objecting to Magistrate Judge Arbuckle's finding regarding supervisory liability, Fattah claims that Rackovan's supervision over the grievance process qualifies him as a "supervisor" and due to this role "he was aware of and disregarding [sic] excessive risks to [Fattah's] health or safety as the individual who processed the grievance paperwork." (Doc. 203, at 11). It is undisputed that Rackovan was the Corrections Superintendent Assistant and part of his job responsibilities included acting as the grievance coordinator at SCI-Rockview. (Doc. 196-3, pp 12:6-7, 12:17-20). In this role, grievances would come to his office first, and then he would direct them to the most appropriate department head for investigation. (Doc. 196-3, pp 12:20-13:1). Fattah submitted various allegations of constitutional violations to

Rackovan as required by the prison's grievance policy through grievances or requests. (Doc. 196-3, p 25:5-8). Rackovan's role as the grievance coordinator only gave him supervisory authority over the mechanics of the prison's grievance policy and not prison personnel. (Doc. 196-3, p 23:7-13). Though he did have minor authority over inmates, he did not have control over medical issues or personnel, namely Defendants Somich, Granlund, and other staff members at SCI-Rockview. (Doc. 196-3, p 23:7-13). There is no evidence that Rackovan had authority over Fattah's medical care or the conditions of his confinement. Moreover, Fattah has not cited to any evidence that would demonstrate Rackovan exceeded the scope of his authority over the grievance process or failed to act in accordance with his job duties. Due to the lack of a genuine dispute over whether Fattah properly exhausted his administrative remedies against Rackvan and his supervisory liability, summary judgment will be granted in favor of Rackovan on Fattah claims that Rackovan is liable for the acts committed by Somich, Granlund, and other DOC staff members.

### B. Somich and Granlund

#### 1. The Claims for Monetary Damages Against Somich and Granlund

With respect to Fattah's claim for monetary damages against Somich and Granlund, Magistrate Judge Arbuckle recommends granting summary judgment in their favor, because Fattah did not exhaust the administrative remedies available to him for this type of relief. (Doc.202, at 29). Fattah objects to this recommendation by arguing that Magistrate Judge Arbuckle misapplied the summary judgment standard. (Doc. 203, at 3-9). I will adopt Magistrate Judge Arbuckle's recommendation on this issue in full.

As previously explained, § 1997e(a)'s exhaustion requirement is mandatory in order to pursue an action in federal court. *See Kantamanto*, 651 F. Supp. 2d at 321 (internal citations omitted). Exhaustion of administrative remedies is required even if the prison grievance system cannot afford the inmate the relief that he seeks in federal court. *Id.* at 322 (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir.2000)). "[P]rison

grievance procedures supply the yardstick for measuring procedural default." *Spruill*, 372 F.3d at 231. Courts must "look to the rules governing the prison's grievance system to ascertain whether [a litigant] has procedurally defaulted his claim for monetary relief." *Id.* at 233. When an inmate is required but fails to request monetary damages in his original grievances, the inmate cannot request such relief in the complaint. *Sanders v. Beard*, No. 3:09-CV-1384, 2013 WL 1703582, at *6 (M.D. Pa. Apr. 19, 2013).

  The relevant portion of the grievance policy at SCI-Rockview reads:

> If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.

(Doc. 196-7, at 10 ¶ 7); *see also Spruill*, 372 F.3d at 234 (reasoning that a regulation in a grievance policy with verbatim language "could give rise to a procedural default for failure to plead properly for relief.").

  Here, Fattah only submitted one grievance, No. 332011, containing allegations against Somich (Doc. 196-7, at 4 ¶ 13) and one grievance, No. 334327, including claims against Granlund (Doc. 196-7, at 4 ¶ 9). Fattah does not request to be compensated with monetary damages in either of these grievances. (Doc. 196-7, at 3-4 ¶¶ 11,14). Furthermore, Fattah does not allege that the Defendants failed to produce any grievances specifically concerning Somich and Granlund. Thus, Fattah has procedurally defaulted any claim for monetary relief against Somich and Granlund by failing to properly exhaust his administrative remedies.

  In the Third Amended Complaint, Fattah also requests "[a] decalation that the acts and omissions described herein violated plaintiff's rights under the US Constitution and/or federal statute." (Doc. 119, at 40 ¶1). Since § 1997e(e) does not apply to claims seeking injunctive or declaratory relief *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003), summary judgment is not proper with respect to the declaratory relief that Fattah has requested against Somich and Granlund. Thus, I will proceed to analyze Fattah's allegations that Somich violated his Eighth Amendment

right to medical care and Granlund violated his Eighth Amendment right to safe conditions of confinement.

### 2. The Claim Against Somich

Regarding Fattah's claim that Somich violated his Eighth Amendment right to medical care, Magistrate Judge Arbuckle recommends granting summary judgment in favor of Somich, because Somich did not deny or know of and disregard an excessive risk to Fattah's health or safety. (*See* Doc. 202, at 33). Fattah objects to this recommendation by arguing that he "misconstrued" and did not draw inferences in favor of his claims that Somich provided inadequate medical care. (*See* Doc. 203 at 11-12). I will adopt Magistrate Judge Arbuckle's recommendation on this issue in full.

Since Fattah alleges that Somich failed to provide Fattah with adequate medical care during his time at SCI-Rockview, I will use the Eighth Amendment standard that is applicable to such claims. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (stating that different standards apply depending on the type of Eighth Amendment violation alleged). The Eighth Amendment requires that prison officials provide adequate medical care to inmates, and make reasonable efforts to assure prisoner health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a claim under the Eighth Amendment's right to adequate medical care, an inmate must cite evidence that shows: (1) a serious medical need and (2) acts or omissions by prison officials that demonstrate deliberate indifference to that medical need. *Rouse v. Plantier*, 182 F.3d 192, 107 (3d Cir. 1999). A deliberate indifference to a serious medical need involves causing "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97 (1976). This type of indifference could exist in a variety of different circumstances, including where (1) there is knowledge of the need for medical care coupled with intentional refusal to provide it, (2) delayed care for non-medical reasons, (3) or prison authorities prevent an inmate from receiving the prescribed treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). While prison systems have a duty to provide prisoners with adequate medical care, simple medical malpractice is

insufficient to present a constitutional violation. *Id.* Likewise, not every illness or injury enjoys constitutional protection; only serious medical needs or injuries will give rise to constitutional scrutiny. *Gerber v. Sweeney*, 292 F.Supp.2d 700, 706 (E.D. Pa. 2003). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67.

Fattah states that Somich deliberately disregarded a risk to his health, because Somich failed to: (1) serve his medication with milk as recommended by Dr. Symons, (2) adhere to his strict medication schedule as recommended by Dr. Symons, and (3) use sanitary syringes during his force feedings. (*See* Doc. 119, at 24 ¶119). Holding these facts in the light most favorable to Fattah, Somich's treatment, at most, rises to the level of simple medical malpractice, let alone a constitutional violation.

Here, Somich worked at SCI-Rockview from September 2008 to July 2012 as a registered nurse. (Doc. 196-5, pp 12:16-14:3, 12:7-9, 14:16-17). In this role, Somich was tasked with providing medical care for inmates, ranging from chronic to emergency care. (Doc. 196-5, pp 13:7-13). He did not have the authority to supervise Fattah's care or make decisions about his treatment plan. (Doc. 196-5, pp 18:7-10; 21:1-5). Somich's interactions with Fattah, in relevant part, include force feeding Fattah pursuant to court order,[3] telling Dr. Symons of Fattah's concerns about his peg tube cite, cleaning the skin around Fattah's peg tube cite, and offering Fattah supplies to change the dressing at the peg tube cite. (*See* Docs. 159-9, at 7, 27, 30, 31, 46, 61, 63, 67, 68, 69; 159-10, at 1, 12, 14, 24). Somich did not have any indication from

---

[3]

It is true that Fattah did point out the existence of a discrepancy (*See* Doc. 197, at 14) between Somich's deposition testimony, where he stated that Fattah ate by himself when he encountered him (Doc. 196-5, p 23:16-25), as opposed to Fattah's medical records, which indicate that Somich was actually present during some of Fattah's gastric tube feedings (*See* Docs. 159-9, 159-10). I agree with Magistrate Judge Arbuckle's finding that this discrepancy does not rise to the level of a genuine dispute of *material* fact that would serve to defeat summary judgment in favor of Somich.

Fattah or otherwise that Fattah was having difficulties with pain management, infection, breathing, vomiting, overfeeding, or the cleanliness of his gastric tube. (*See* Doc. 196-5, pp 25:23-25, 26:1-3, 27:9-20, 28:1-4). Furthermore, Somich had no notice that the nurses, including himself, were not following Dr. Symons's treatment protocol for Fattah, specifically regarding Fattah's feeding schedule or his insistence on taking his Motrin with milk.[4] (Doc. 196-5, pp 25:23-25, 28:6-9). Thus, summary judgment in favor of Somich is appropriate with regard to Fattah's claim that Somich failed to provide him with adequate medical care in violation of the Eighth Amendment.

### 3. The Claim Against Granlund

With respect to Fattah's remaining claim[5] against Granlund that he violated his rights under the Eighth Amendment by placing him in a suicide cell and smock, Magistrate Judge Arbuckle recommends granting summary judgment in Granlund's favor, because Granlund was not personally involved in placing Fattah in a suicide cell or suicide clothing. (Doc. 202, at 40). Fattah objects to this recommendation by

---

[4]

On one occasion, Fattah refused to take his medication without milk. (Doc. 159-9 at 63). Somich offered to procure the milk that Fattah requested but mentioned that it may take him awhile to do so. (Doc. 159-9 at 63). He also offered to provide Fattah with the Motrin after he was fed. (Doc. 159-9 at 63).

[5]

Magistrate Judge Arbuckle declined to address Fattah's claims against Granlund regarding (1) the allegedly improper cell searches and seizure of Fattah's mail and (2) the alleged excessive force claims, relating to a cell door being shut in his face and the use of a restraint chair for feeding. (Doc. 199 at 24 ¶ 122). The Report and Recommendation (Doc. 60), which was adopted (Doc. 61), dismissed Fattah's fourth cause of action, concerning the alleged illegal searches and seizures, and his second cause of action, regarding the alleged excessive force claims. (*See* Doc. 134 at 2, n.2). These claims, however, were improperly included in the Third Amended Complaint. (*See* Doc. 119). Magistrate Judge Arbuckle further explained that Fattah should not be permitted to reassert his illegal search and seizure and excessive force claims under his third cause of action, which implicates violations of the Eighth Amendment. (*See* Doc. 202 at 17-18). I agree with Magistrate Judge Arbuckle's determination that the only remaining claims asserted against Granlund are related to his conditions of confinement regarding his placement in a suicide cell and smock. (*See* Doc. 202 at 18).

13

arguing that Magistrate Judge Arbuckle misapplied the law applicable to this claim and failed to explain the reasoning behind his recommendation. (Doc. 203, at 13-14). I will adopt Magistrate Judge Arbuckle's recommendation on this issue in full.

The Eighth Amendment protects against cruel and unusual punishment. "[P]rison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit deliberate indifference to serious medical needs of prisoners." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (internal quotations omitted). "A particular vulnerability to suicide represents a serious medical need." *Id.* at 320. Thus, temporary placement on suicide watch does not rise to level of cruel and unusual punishment. *See Starks v. Couch*, No. 08–cv–407, 2009 WL 331357, at *2 (S.D.Ill. Feb.11, 2009) ("[T]here is no constitutional right to avoid being placed on suicide watch."). Moreover, several courts have found that placement on suicide watch for a short duration, even when unnecessary, does not rise to the level of cruel and unusual punishment. *See, e.g.*, *Sheldon v. Smith Cty. Jail Med. Clinic*, No. CIVA 6:08CV68, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010), *aff'd*, 439 F. App'x 343 (5th Cir. 2011) (stating that placing an inmate on suicide watch was not "unreasonable or unconstitutional" even though these precautions were unnecessary); *Marshall v. Burden*, No. 5:09CV00128 BSM-JJV, 2010 WL 670079, at *4 (E.D. Ark. Feb. 22, 2010) (stating *id.*).

In support of his claim against Granlund, Fattah broadly states:

> This Court has already determined that the Plaintiff sufficiently pled his claims against Granlund, irrespective of the Defendant's displeasure with that determination. The Defendant has not established that there is not genuine issue of material fact regarding the claims against Granlund and he certainly has not established that he is entitled to prevail on his motion as a matter of law.

(Doc. 197, at 16). Granlund, however, was not personally in control of the decision to place Fattah in a suicide cell and did not place the suicide smock on Fattah. Granlund was a Unit Manager at SCI-Rockview during the time period relevant to this action. (Doc. 196-4, p 10:17-20). For a short period of time, Granlund supervised the block

where Fattah was housed. (Doc. 196-4, pp 18:12-14, 19:9-12). Regarding the procedure for placement on suicide watch, Granlund explained that the Mental Health Department was in charge of determining whether to place an inmate in a suicide cell, the duration of his confinement in the suicide cell, and the conditions for his release. (Doc. 196-4, p 29:8-11). The Corrections Healthcare Administrator reviewed Fattah's situation and approved his placement in the Restricted Housing Unit. (Doc. 159-9, at 5). In addition, Dr. Symons placed the suicide smock on Fattah, not Granlund. (Doc. 196-2, p 136:6-16). Fattah has not articulated any facts that dispute this evidence. Moreover, even if it was unnecessary for Granlund to assist in placing Fattah on suicide watch, this does not amount to a violation of Fattah's Eighth Amendment right to safe conditions of confinement. Thus, summary judgment in favor of Granlund is appropriate with regard to Fattah's claim that Granlund failed to provide him with safe conditions of confinement in violation of the Eighth Amendment.

## IV. Conclusion

For the above stated reasons, Magistrate Judge Arbuckle's R&R will be adopted, and the Motion for Summary Judgment filed by Defendants Rackovan, Somich, and Granlund will be granted.

An appropriate order follows.

12/18/2019 /s/ A. Richard Caputo
Date                                                            A. Richard Caputo
                                                                                  United States District Judge